611 A.2d 770

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,**

**v.**

**Charles J. McGLYNN, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted March 6, 1992.

Decided April 24, 1992.

---

**4.** Our disposition of this issue makes it unnecessary to address Employer's additional arguments.

Timothy P. Wile, Asst. Counsel-in-Charge of Appellate Section, for appellant.

Daniel P. Mudrick, for appellee.

Before McGINLEY and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

The Pennsylvania Department of Transportation (DOT) appeals from an order of the Court of Common Pleas of Delaware County, dated August 7, 1991, which sustained the driver's license suspension appeal and reinstated the driving privileges of Charles J. McGlynn (McGlynn).

McGlynn's license was suspended for refusing to submit to chemical testing of his blood-alcohol ratio pursuant to Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b).[1] Upon appeal to the trial court, a *de novo* hearing was conducted. The trial court focused on the question of whether McGlynn had been placed under arrest at the time he refused to submit to the test. The trial court determined, based upon the police officer's testimony, that McGlynn was not under the control of the officer either at

1. 75 Pa.C.S. § 1547, commonly known as the Implied Consent Law, provides in relevant part:

(b) *Suspension for refusal.*—

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

the scene of the accident in which he had been involved or at the hospital. The trial court sustained McGlynn's appeal.

 Our scope of review where the trial court heard the matter *de novo* is limited to a determination of whether the trial court based its findings of fact on substantial competent evidence or committed an error of law. *Department of Transportation, Bureau of Traffic Safety v. Uebelacker,* 98 Pa.Cmwlth. 436, 511 A.2d 929 (1986). To sustain a license suspension for refusal to submit to a chemical test, we must be satisfied that the Commonwealth has borne the burden of proving that the driver (1) was placed under arrest for driving under the influence of alcohol and that the arresting officer had reasonable grounds for the arrest; (2) was requested to submit to the test; (3) refused to submit to the test; and (4) was warned of the consequences of refusing. *Department of Transportation, Bureau of Driver Licensing v. Webb,* 139 Pa.Cmwlth.Ct. 1, 590 A.2d 28 (1991).

The facts are summarized as follows. McGlynn was the operator of a motor vehicle which was involved in an accident on June 6, 1990. Officer Charles V. Laut of the Collingdale Police Department arrived on the scene and observed that McGlynn was staggering and that he smelled of alcohol. Officer Laut further observed several bottles of beer in McGlynn's vehicle, one of which had been opened. An ambulance was summoned and it transported McGlynn to the Fitzgerald Mercy Hospital emergency room.

At the hospital, Officer Laut advised McGlynn that he believed McGlynn was under the influence of alcohol, asked McGlynn to submit to a blood test and told him that a refusal would result in a license suspension.[2] McGlynn responded that his head hurt and that he did not want to submit to the test. After the second request by Officer

2. Officer Laut testified that he made three requests to McGlynn to submit to chemical testing; however he did not testify whether he advised McGlynn of the consequence of refusal the first time he asked McGlynn to submit. Officer Laut testified that he did advise of the consequence of refusal during the second and third requests. (N.T. 12/5/90, pp. 4–5, 12–13; R.R. 12a–13a, 20a–21a.)

Laut, McGlynn again refused. After the third request, McGlynn responded that he was afraid of needles. Officer Laut testified that he stopped requesting submission at that point and decided that it was a refusal. McGlynn contradicted this testimony and testified that he did in fact consent to the test after he told Officer Laut that he "hates needles" and he recalls only the one occasion when Officer Laut asked him to submit to the test. McGlynn testified that he was dazed during the relevant period of time. Immediately thereafter, blood was drawn from McGlynn by the emergency room personnel for medical reasons and in accordance with Section 3755(a) of the Vehicle Code, 75 Pa.C.S. § 3755(a).[3]

DOT argues that the trial court erred in its finding that McGlynn was not under arrest at the time he refused to submit to the chemical test, based on the testimony elicited at the hearing. McGlynn argues that he was never placed under arrest nor was he advised that he would be placed under arrest at the time of his refusal. McGlynn contends that neither was he subject to Officer Laut's custody and control.

■ The question of whether or not a driver has been "placed under arrest" for purposes of Section 1547(b) of the Vehicle Code is a factual, rather than a legal determination, and all that is necessary is that the driver be under the custody and control of the person effecting the arrest. *Uebelacker.* A formal declaration of arrest is not required to satisfy the requirement for suspending a driver's license for refusal to submit to a chemical test; the relevant

---

3. 75 Pa.C.S. § 3755(a) provides, in relevant part:

 (a) General rule.—If, as a result of a motor vehicle accident, the person who drove, operated or was in actual physical control of the movement of any involved motor vehicle requires medical treatment in an emergency room of a hospital and if probable cause exists to believe a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) was involved, the emergency room physician or his designee shall promptly take blood samples from those persons and transmit them within 24 hours for testing to the Department of Health or a clinical laboratory. . . .

inquiry is whether the driver, at the time he was asked to submit to the chemical test, should have inferred from the totality of the circumstances that he was under the control and custody of the officer. *Webb; Uebelacker.*

In *Uebelacker,* the officer arrived at the scene of an accident and found Uebelacker, who admitted being the operator of one of the vehicles, standing nearby. The officer followed the responding ambulance to the hospital and waited while Uebelacker was examined. After the examination, the officer approached Uebelacker and informed him that he was going to be arrested for driving under the influence of alcohol and asked Uebelacker to submit to a blood test, explaining the consequence of a refusal. Uebelacker refused to submit. Subsequently, Uebelacker was arrested. The trial court concluded that although Uebelacker had been informed that he was going to be arrested, no arrest had occurred prior to the request that he submit to the blood test, and it sustained his appeal of his driver's license suspension. This Court reversed the trial court, stating as follows:

> The court found that the officer radioed for an ambulance, followed the ambulance to the hospital, waited until Appellee was confined to bed, and then told him he was going to be placed under arrest for driving under the influence of alcohol, all of which demonstrate a most responsible approach to the situation presented. Surely the reasonable impression of Appellee should have been that he was subject to the officer's custody and control at that point in time. It was not necessary for the officer to use the exact words, "You are now under arrest." Given the totality of the circumstances, we think a reasonable interpretation of the officer's words and actions would have been that he was going to place Appellee under arrest, not sometime in the future, but *immediately.* Anything the officer may have said to Appellee regarding arrest *after* Appellee had refused to submit to the blood test is irrelevant to the question of whether or not the

Appellee was under arrest at the time the refusal was made.

98 Pa.Commonwealth Ct. at 440–441, 511 A.2d at 931. (Emphasis in original.)

In *Webb*, the trial court determined that no arrest had occurred in a situation where Webb was stopped by a police officer for a traffic violation and asked to undergo a field sobriety test. After Webb failed the field sobriety test, the officer asked Webb to submit to a chemical test and warned him of the consequence of a refusal. Webb refused to submit to the test, and at that point the officer placed him under arrest for driving under the influence of alcohol. We reversed the trial court, relying upon our earlier decision in *Uebelacker*, finding that Webb's compliance with the officer's orders during the stopping of his vehicle and the administration of the field sobriety test evidenced Webb's submission to the officer's control. We stated, "the officer's words and actions demonstrated that Webb's arrest was imminent, and it is not significant that the formal words of arrest did not come until immediately after Webb refused the test." 139 Pa.Cmwlth.Ct. at 5, 590 A.2d at 30.

Finally, the case of *Department of Transportation, Bureau of Driver Licensing v. Shine*, 114 Pa.Cmwlth. 523, 539 A.2d 42 (1988) is similar to the present case. In that case, Shine, the driver, was involved in an accident and was taken to the hospital for treatment of facial injuries. When the police officer arrived at the hospital, he was informed that, due to the seriousness of Shine's facial injuries, Shine would be unable to submit to a breath test. The officer asked Shine to submit to a blood test and warned of the consequence of refusal. Shine refused due to a fear of needles, but he did state that he would be willing to submit to a breath test. The officer then told Shine that he would receive a summons on the criminal charges at a later date. The trial court sustained Shine's appeal of his license suspension on the basis that Shine had not been placed under arrest. We reversed, holding that at the time of the re-

quest for the blood test, Shine was under the custody and control of the officer.

■ In the present case, Officer Laut testified:

Q Was Mr. McGlynn placed under arrest?

A At that time he was under treatment. So I—he was not going anywhere. And I sent the charges out via citation. He was not taken into custody that night. (N.T. p. 5, R.R. 13a.)

The trial court relied upon this testimony to support its finding that McGlynn was not under the custody and control of Officer Laut, specifically noting that Officer Laut did not mention that he was going to arrest McGlynn, and that there was no evidence that any police officer or hospital employee indicated to McGlynn that he was not free to leave.

We find that the trial court failed to review the totality of the circumstances. Officer Laut testified that the exchange between himself and McGlynn occurred while McGlynn was under treatment in the emergency room. (N.T. p. 4; R.R. 12a.) Officer Laut also testified that before making the request to McGlynn, he had told McGlynn that he felt McGlynn was under the influence of alcohol. (N.T. p. 4; R.R. 12a.) In accordance with the law as interpreted in *Uebelacker, Webb* and *Shine,* McGlynn clearly was under the custody and control of Officer Laut. Upon hearing Officer Laut's opinion that McGlynn was under the influence of alcohol, McGlynn should have reasonably inferred that an arrest was imminent, if not immediate.

Accordingly, the trial court's determination that McGlynn was not placed under arrest is not supported by substantial competent evidence.

In his appeal to the trial court, McGlynn argued that he did in fact consent to submit to the chemical test; at the hearing he testified in support of his contention. The trial court, in its opinion, stated that it was unnecessary to address that question because it had determined that DOT did not prove that McGlynn was under arrest at the time he

was requested to submit to a chemical test. DOT argues in its brief against McGlynn's claim that he consented to submit to the test. We decline to address the issue since there are no findings made by the trial court related to this question. Thus, we will reverse the trial court's order in part and vacate and remand with instructions to the trial court to dispose of the issue of whether McGlynn refused to submit to the chemical test.

## ORDER

AND NOW, this 24th day of April, 1992, the order of the Court of Common Pleas of Delaware County in the above-captioned matter, dated August 7, 1991, is reversed in part as to its finding that Charles J. McGlynn was not under arrest and is vacated insofar as it reinstates the driving privileges of Charles J. McGlynn.

The matter is remanded to the trial court for a determination of the issue of whether Charles J. McGlynn refused to submit to a chemical test pursuant to 75 Pa.C.S. § 1547.

Jurisdiction relinquished.

McGINLEY, Judge, dissenting.

I respectfully disagree with the conclusion reached by the majority. *Webb, Shine,* and *Uebelacker* all deal with situations where the arresting officer's actions or statements at the time of the request to submit to chemical testing would cause a reasonable person to believe that he was in custody. Here, the trial court concluded that such circumstances were absent.

Although Officer Laut testified that he originally told McGlynn that he had reason to believe McGlynn was under the influence of alcohol, and it is possible McGlynn could have inferred a pending arrest from this statement, Officer Laut also testified that McGlynn did not appear to understand him at first. While Officer Laut testified he repeated his request to submit to the test until McGlynn understood, he did not repeat his statement concerning his belief that

McGlynn had violated the law. McGlynn testified that he did not see Officer Laut at the scene of the accident and that he first became aware of him at the hospital, where he heard Officer Laut ask him once to submit to blood alcohol testing.

I would hold that the trial court's decision was supported by substantial evidence.