**Sellers v. PennDOT**

*Bernard L. Coates Jr.,* for petitioner.

*George Kabusk, assistant counsel,* for the Commonwealth.

OLER, *J.,* March 11, 1993—This case is an appeal by Kenneth C. Sellers from a suspension of his operating privilege by the Pennsylvania Department of Transportation for refusal to submit to a chemical test to determine the alcoholic content of his blood under Pennsylvania's implied consent law.[1] A hearing was held on the appeal on March 1, 1993, before the undersigned judge. Based upon the evidence submitted at the hearing, the following findings of fact, discussion, and order of court are made and entered.

## FINDINGS OF FACT

(1) The appellant is Kenneth C. Sellers, an adult individual residing in Cumberland County, Pa.

(2) On Thursday, November 5, 1992, at about 5 p.m., appellant was involved in a serious multi-car accident at the intersection of 17th and State streets, City of Harrisburg, Dauphin County, Pa.

(3) Fault with respect to the accident was dependent upon whether appellant or another driver had the light at the intersection—a matter as to which the evidence remains inconclusive.

(4) Harrisburg City Police Officer Kenneth A. Bittner found the appellant at the accident scene seated behind the wheel of his automobile; the officer noticed an

---

1. Act of June 17, 1976, P.L. 162, §1, as amended, 75 Pa.C.S. §1547 (1992 Supp.).

odor of alcoholic beverages on appellant's breath during a brief interview.

(5) Appellant later told the officer that he had had three glasses of wine at a late lunch prior to the accident.

(6) Appellant had some pain in the area of his ribs and wrist, and upon the recommendation of paramedics he was immobilized on a back board and transported by ambulance to Osteopathic Hospital in Lower Paxton Township, Dauphin County, Pa.

(7) At the hospital, Officer Bittner approached the appellant, while he was still immobilized on the back board, and again perceived the odor of alcoholic beverages on his breath.

(8) The officer advised appellant that he was investigating the accident, and that he had reason to believe that appellant had been driving under the influence of alcohol.

(9) Because of appellant's involvement in a serious accident and the odor of alcoholic beverages upon his breath, the officer asked him to submit to a blood-alcohol test to determine the alcoholic content in his blood; appellant was told that if he refused to take the test, his driver's license would be suspended for one year.

(10) At the time of the officer's request, no *Miranda* warnings had been given to appellant, nor were any *Miranda* warnings given to him at any time.

(11) Appellant agreed to submit to a test.

(12) When a physician appeared for the purpose of drawing blood for the test specimen, appellant refused to permit the procedure because of an aversion to needles.

(13) The officer again advised appellant of the consequence of a test refusal in the form of a one-year license suspension.

(14) Appellant reiterated his refusal to submit to a drawing of blood and offered to submit to a breath test.

(15) The officer made a good-faith effort to arrange for administration of a breath test in accordance with appellant's wishes, but was unable to secure the necessary personnel and advised appellant that the only option was a test utilizing appellant's blood.

(16) Appellant asked to call an attorney, but the officer advised him that he did not have a right to speak with an attorney in connection with the test.

(17) Appellant again stated that he would not submit to the drawing of blood.

(18) The officer again explained the consequence of a test refusal.

(19) Appellant again stated his refusal.

(20) The officer advised appellant that he was going to consider appellant's position as a refusal to submit to a test.

(21) Before departing the hospital, the officer advised appellant that he would be charged with driving under the influence.

(22) The officer never formally placed appellant under arrest.

(23) The officer testified that, notwithstanding appellant's being restrained for medical purposes, he was free to leave in a legal sense.

(24) The officer left the hospital with the intention of filing a charge of driving under the influence of alcohol against appellant; however, a consultation with the Office of the District Attorney of Dauphin County resulted in a determination that the evidence would not support a prosecution and no charge was filed.

(25) Based upon the officer's testimony, appellant cannot be said to have been under the custody and control of the officer when he was asked to submit to a chemical test.

(26) The following additional findings of fact are made:

(a) The officer had reasonable grounds to believe appellant was driving while under the influence of alcohol;

(b) Appellant's conduct and language constituted a refusal to submit to chemical testing for the purpose of determining the alcoholic content of his blood; and

(c) Appellant's refusal to submit to chemical testing was the result of his aversion to needles and was not the result of any confusion concerning his right to counsel.

(27) By order mailed December 17, 1992, appellee Department of Transportation suspended appellant's operating privilege for a period of one year based upon the report of a test refusal.

## DISCUSSION

Section 1547 of the Pennsylvania Vehicle Code provides, in pertinent part, as follows:

"Any person who drives ... a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood ... if a police officer has reasonable grounds to believe the person to have been driving ... a motor vehicle ... while under the influence of alcohol....

"... If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit

to chemical testing and refuses to do so, ... the [D]epartment [of Transportation] shall suspend the operating privilege of the person for a period of 12 months.

"... It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing." Act of June 17, 1976, P.L. 162, §1, as amended, 75 Pa.C.S. §1547(a), (b) (1992 Supp.).

"In order to support the suspension of one's license under section 1547 of the code, the department must prove that the driver involved: (1) was placed under arrest while driving under the influence of alcohol, and that the arresting officer had reasonable grounds to believe the driver was intoxicated; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that his license would be revoked if he refused to take the test."[2]

"The question of whether or not a driver has been placed under arrest for purposes of section 1547(b) of the code ... is a factual determination rather than a legal determination.... [A]ll that is necessary is that the driver be under the custody and control of the person

---

2. *Commonwealth, Dept. of Transportation, Bureau of Driver Licensing v. Shine*, 114 Pa. Commw. 523, 525-26, 539 A.2d 42, 44 (1988).

On the subject of the contents of the warning to be conveyed in connection with a test refusal, see *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992); *Commonwealth, Dept. of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989); *Kitchenoff v. Commonwealth, Dept. of Transportation*, 147 Pa. Commw. 552, 608 A.2d 645 (1992); *Commonwealth, Dept. of Transportation, Bureau of Driver Licensing v. Sorg*, 147 Pa. Commw. 82, 606 A.2d 1270 (1992), *alloc. refused*, 613 A.2d 561 (1992); *Habowski v. Commonwealth, Dept. of Transportation*, no. 2654 Civil 1992 (December 14, 1992).

effecting the arrest." *Commonwealth, Dept. of Transportation, Bureau of Driver Licensing v. Shine,* 114 Pa. Commw. 523, 526, 539 A.2d 42, 44 (1988).

One commentator has summarized the law as it relates to an arrest within the meaning of the implied consent statute as follows:

"An 'arrest' for purposes of section 1547 does not require any formal declaration of arrest by the police officer nor does the arrest have to constitute an 'arrest' for purposes of the Rules of Criminal Procedure. All that is required is that the motorist be under the custody and control of the officer at the time the chemical test is requested. A motorist being treated for injuries in a hospital emergency room has been held to have been in the 'custody and control' of the police officer sufficient to constitute an 'arrest' for purposes of the Implied Consent Law, even [though] formal DUI charges were not immediately lodged against the motorist but sent out later by citation.[3] In *[Commonwealth,] Dept. of Transportation, Bureau of Driver Licensing v. McGlynn,*[4] the motorist was approached by the police officer while the motorist was being treated in a hospital emergency room. The officer told the motorist that he believed that the motorist was under the influence of alcohol and asked him to submit to a blood test. The motorist refused. The common pleas court sustained the motorist's appeal of the resulting operating privilege suspension on the basis that the motorist was not under 'arrest' when the test request was made. The Commonwealth Court reversed that finding, holding

---

3. *Commonwealth, Dept. of Transportation, Bureau of Driver Licensing v. McGlynn,* 147 Pa. Commw. 454, 611 A.2d 770 (1992); *Commonwealth, Dept. of Transportation, Bureau of Driver Licensing v. Shine, supra.*

4. 147 Pa. Commw. 454, 611 A.2d 770 (1992).

that under the totality of the circumstances, the motorist should have reasonably inferred from the conduct of the officer that an arrest was imminent, if not immediate." Wile, *A Survey of Pennsylvania's Implied Consent Law*, 64 Pa. B. Ass'n Q. 15, 17 (January 1993).

In the present case, the police officer forthrightly testified that he considered appellant free to leave when he was being asked to submit to a chemical test, although he was physically restrained for medical purposes. For the court to conclude, notwithstanding this testimony, that the department has met its burden of proving that appellant was in fact under arrest within the meaning of the implied consent law, it would be necessary to disregard this evidence in the interest of achieving a certain result.[5]

## ORDER OF COURT

And now, March 11, 1993, upon consideration of appellant's license suspension appeal, and following a hearing, the appeal is sustained and the order of suspension of appellant's operating privilege mailed December 17, 1992, is reversed.

---

5. Because of the court's disposition of this case, it is unnecessary to discuss the issues of the reasonableness of the request for a chemical test and the sufficiency of the warning as to consequences of a refusal.