642 A.2d 625

**Chong S. YI**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 14, 1994.

Decided May 24, 1994.

William A. Kuhar, Jr., Asst. Counsel–Appellate Section and Timothy P. Wile, Asst. Counsel In–Charge of Appellate Section, for appellant.

Patrick J. Thomassey, for appellee.

Before COLINS and KELLEY, JJ., and RODGERS, Senior Judge.

COLINS, Judge.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) appeals from an April 7, 1993 order of the Court of Common Pleas of Allegheny County (Common Pleas), which sustained the appeal of Chong S. Yi (Yi) from an order of the Department suspending her license for failure to submit to chemical testing, pursuant to Section 1547(b) of the Vehicle Code (Code).[1]

---

1. Section 1547(b) of the Code, *as amended*, 75 Pa.C.S. § 1547(b), provides, in pertinent part:

    (1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do

On April 20, 1992, the Department notified Yi by official notice that her operating privilege was suspended for one year pursuant to Section 1547(b) of the Code. Yi filed a statutory appeal from the Department's suspension order, and Common Pleas held a de novo hearing on April 7, 1993, at which Officer Jerome Akers (Officer Akers) of the Pittsburgh Police Department testified for the Department, and Yi testified on her own behalf.

At the de novo hearing before the Honorable Robert A. Doyle (Judge Doyle), Officer Akers testified to the following observations. He was dispatched to Sandusky Street on the North Side section of the City of Pittsburgh at approximately 4:45 a.m. There, Officer Akers found a motor vehicle which was stationary. However, its engine was running, and Yi was apparently unconscious in the driver's seat. Officer Akers opened the driver's side door of Yi's vehicle and detected a strong odor of alcohol emanating from inside the vehicle. Yi was startled and began to speak when Officer Akers opened the car door, but her speech was incoherent. After Yi could not exit the vehicle when directed to, Officer Akers removed her from the vehicle and transported her to a local police station so that sobriety tests could be administered.

Officer Akers' testimony is very limited regarding the events which occurred once Yi was taken to the police station, because he did not inform Yi of the implied consent law or administer the breathalyzer test to Yi. Apparently, Officer Gilbert Espy (Officer Espy) performed these acts. Officer Akers' testimony regarding the time period when Yi was at the police station, was as follows:

Q. (By Judge Doyle) You weren't able to turn the key off?

A. Couldn't turn the key off at that time. We finally got her out of the vehicle. I couldn't give her a sobriety test because of her condition; she was not able to walk. And the area that we were in, there was highly [sic] a lot of traffic there. So we took her to the intoxilyzer. At that—

so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

Q. (By Judge Doyle) Downtown?

A. Downtown traffic building. At that point she was very uncooperative. She was read her rights and told failure to cooperate is the same as a failure to—same as a failed breathalyzer, which Officer Espy finally told her, since she wouldn't cooperate, she failed the breathalyzer exam.

Q. (By Sean Stevenson, Esquire, counsel for the Department) Did you or anyone else inform her of the implied consent law?

A. Officer Espy did.

Q. That she would lose her license for a year if she failed to take the test?

A. That he did, yes.

Mr. Stevenson: I have nothing further, Your Honor.

The Department did not present any additional evidence to corroborate Officer Akers' testimony; the Department did not call Officer Espy to testify about his informing Yi of the implied consent law or his administering the breathalyzer test to Yi. Moreover, the Deparment did not submit the intoxilyzer certificate as evidence to prove that the breathalyzer test was given to Yi and that she failed or refused to give the proper breath samples. Instead, when Yi's counsel attempted to submit the intoxilyzer certificate as evidence, the Department objected to the evidence as hearsay, since the certificate was prepared by Officer Espy, who was not present to testify about the certificate. Before Common Pleas ruled on the Department's objection, Yi's counsel withdrew his attempt to get the certificate admitted as evidence and made an oral motion for nonsuit. Common Pleas denied Yi's motion for nonsuit, and Yi presented her defense.

Yi testified that after she was taken to the police station, she was given the breathalyzer test. She further testified that the police officer giving the test told her she was not blowing hard enough. Yi stated that she blew into the breathalyzer machine three times but that the police officer said that she refused the test because she was not making enough effort to meet the requirements. During Yi's testimony, her counsel

attempted for the second time to offer the intoxilyzer certificate into evidence, but the Department objected vehemently that the certificate was hearsay evidence.

Judge Doyle agreed with the basis for the Department's hearsay objection and refused to admit the certificate into evidence. At that point, the de novo trial moved quickly toward its conclusion. Judge Doyle inquired why Officer Espy was not called as a witness, and counsel for both parties insisted that Officer Espy's testimony was not necessary to support their respective positions. The Department stated that Officer Espy's testimony was unnecessary, because Officer Akers' testimony, by itself, was sufficient to prove that Yi had refused chemical testing pursuant to Section 1547(b) of the Code. Conversely, Yi's counsel stated that because the Department has the burden of proving that Yi refused chemical testing, it would not subpoena Officer Espy, because without his testimony regarding the implied consent warning or his administration of the breathalyzer test, the Department could not prove its case against Yi.

At that point in the proceedings, Judge Doyle informed the parties that he would take the matter under advisement and issue a decision. In an opinion and order filed April 7, 1993, Common Pleas sustained Yi's appeal of her license suspension. In his opinion explaining the decision, Judge Doyle stated:

> For various unclear reasons, he [Officer Espy] was not subpoenaed for appearance at the instant appeal.

> This creates a number of flaws in the Commonwealth's case, the greatest of which is a denial of the defendant's right to face and examine her accuser rather than be subjected to hearsay.

> While both sides are at a loss to explain precisely why this officer was not subpoenaed, we believe his absence to be fatal to the Commonwealth's case.

> Hence, rather than continue with a discussion of the details of the intoxilyzer test, we shall allow the defendant to enjoy her windfall for the time being.

Therefore, we sustain the appeal.[2]

The Department filed the instant appeal seeking review of Common Pleas' April 7, 1993 decision and order. While, we disagree with Common Pleas' reasons for sustaining Yi's appeal, we nonetheless affirm Common Pleas' decision, because the Department did not meet its burden of proving that Yi refused to submit to chemical testing in violation of Section 1547(b) of the Code.

■ In a license suspension case, our "scope of review is limited to determining whether [Common Pleas'] findings of fact ... are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion...." *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 248, 555 A.2d 873, 875 (1989). The Department raises two issues on appeal.

■ First, the Department contends that Common Pleas erred when it concluded that the Department's failure to call Officer Espy as a witness denied Yi her "right to face and examine her accuser rather than be subjected to hearsay." The Department asserts that because a license suspension proceeding is a civil matter, Yi does not possess a constitutional right under the Sixth Amendment of the United States Constitution to confront and cross-examine her accuser. This Court held in *Ploof v. Commonwealth*, 139 Pa.Commonwealth Ct. 235, 590 A.2d 1318 (1991), *petition for allowance of appeal denied*, 530 Pa. 634, 606 A.2d 903 (1992), that the Sixth Amendment right to confront and cross-examine witnesses was inapplicable to license suspension proceedings, because they are civil proceedings and not penal in nature. Yi, therefore, did not have a Sixth Amendment right to confront and cross-examine Officer Espy. Accordingly, we agree with the Department's contention that Common Pleas erred when it stated that the Department's failure to call Officer Espy as a witness deprived Yi of her right to confront and cross-examine Officer Espy.

2. See Common Pleas' June 29, 1993 opinion at page 2.

Second, the Department contends that Common Pleas committed an error of law or an abuse of discretion when it concluded that the Department did not establish that Yi had refused to submit to chemical testing. We disagree. In *Ostrander v. Department of Transportation, Bureau of Driver Licensing*, 116 Pa.Commonwealth Ct. 243, 246, 541 A.2d 441, 442 (1988), we stated:

It is well settled that in order to establish a *prima facie* case of a Section 1547(b) suspension, the Department must prove: (1) that the defendant was placed under arrest upon the charge of driving while intoxicated, and the arresting officer had reasonable grounds to believe the defendant was driving while intoxicated; (2) that [she] was requested to submit to a breathalyzer test; and (3) [she] refused to do so. *Where the issue is raised*, the Commonwealth must also establish that it fulfilled its duty under Section 1547(b)(2) of warning a driver that [her] operating privileges will be suspended or revoked upon refusal to submit to a chemical test.

■ The question at issue here is whether Yi refused to submit to the breathalyzer test. We are aware, as the Department has painstakingly asserted in its brief, that in order to show that Yi refused the breathalyzer test, the Department need not establish that Yi objected to taking the test. "[E]ven a good faith effort to complete the test constitutes a refusal where the motorist fails to supply a sufficient breath sample." *Olbrish v. Department of Transportation, Bureau of Driver Licensing*, 152 Pa.Commonwealth Ct. 423, 425 n. 1, 619 A.2d 397, 398 n. 1 (1992). However, we conclude that the Department did not present sufficient evidence to prove that Yi did not supply a sufficient breath sample during the breathalyzer test.

Essentially, we agree with Common Pleas' statement that the Department's failure to call Officer Espy to testify was "fatal to the Commonwealth's case." Officer Akers' vague testimony regarding Yi's breathalyzer test indicates that he did not perform or observe first hand the administration of the test. By itself, Officer Akers' testimony is not sufficient to

support the conclusion that Yi failed to provide a sufficient breath sample. The Department could have presented the testimony of Officer Espy, who did administer the test to Yi, but it chose not to call Officer Espy as a witness. Moreover, even without Officer Espy's testimony, the Department may have been able to prove its case by offering the intoxilyzer certificate with the results of Yi's test into evidence. However, the Department chose not to present the certificate, and, in fact, succeeded in preventing Yi's counsel from making the certificate a part of the record. Without any supporting evidence to corroborate Officer Akers' hearsay testimony, the Department failed to meet its burden of proving that Yi refused to submit to chemical testing.

Accordingly, while we disagree with Common Pleas' conclusion that Yi had a right to face and examine her accuser during the license suspension proceedings, the trial court correctly sustained Yi's appeal.

## ORDER

AND NOW, this 24th day of May, 1994, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.