**Stephanie H. PAPPAS**

v.

**COMMONWEALTH of Pennsylvania, DE-PARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING,** Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 13, 1995.

Decided Jan. 3, 1996.

**506**

Marc A. Werlinsky, Assistant Counsel–Appellate Section, and Timothy P. Wile, Assistant Counsel In–Charge Appellate Section, for appellant.

Nicholas M. Zanakos, for appellee.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

**DOYLE, Judge.**

The Department of Transportation, Bureau of Driver Licensing (DOT), appeals an order of the Court of Common Pleas of Northampton County which sustained the appeal of Stephanie Pappas from a one-year suspension of her operating privileges for failure to submit to chemical testing pursuant to Section 1547(b)(1) of the Vehicle Code (Code).[1]

On April 24, 1994, Officer Paul Wargo of the Allentown Police Department was dispatched to the scene of a traffic accident where he encountered Pappas who was one of the drivers of the vehicles involved in the accident. While speaking with her, Officer Wargo noted that she appeared to be quiet and nervous and avoided eye contact with him. Because he also noted that she had a strong odor of alcohol on her breath, Officer Wargo asked her to perform field sobriety tests. She failed the heel-to-toe test and the raised foot test. Thereafter, Officer Wargo administered a portable breath test which indicated that Pappas had a .19% blood alcohol content (BAC).[2] Officer Wargo detained her, placed her in a police car, and transported her to Allentown Police Headquarters.

Officer William Mentesana met Pappas at the police headquarters, observing her for approximately twenty minutes. He read Pappas her *Miranda*[3] rights and explained the requirements of the implied consent law, including the consequences of her refusal to submit to the administration of a chemical test of her breath. Pappas signed a form acknowledging her consent to be tested. While the test was administered, Pappas was asked to blow "real hard" into a breathalyzer machine. When the machine indicated that an insufficient breath sample had been received, Officer Mentesana explained to Pap-

---

1. Section 1547(b)(1) provides:

   If any person placed under arrest for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
   75 Pa.C.S. § 1547(b)(1).

2. Section 1547(d)(3) of the Code provides: "If chemical testing of a person's breath, blood or urine shows [t]hat the amount of alcohol by weight in the blood of the person tested is 0.10% or more, this fact may be introduced into evidence [to establish that the defendant was under the influence of alcohol]." 75 Pa.C.S. § 1547(d)(3).

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

pas that she could lose her license for one year if she failed to submit to the test, and she agreed to try again. In her second attempt, Pappas provided a sufficient breath sample and a reading of .218% BAC was registered on the machine. The Department's regulations, however, require "[t]wo consecutive actual breath tests, without a required waiting period between the two tests," 67 Pa.Code § 77.24(b)(1), and Pappas was unable to provide another sufficient breath sample. When that occurred, Officer Mentesana determined that Pappas had refused to submit to chemical testing.

Based on the refusal, DOT suspended Pappas' driver's license for one year pursuant to Section 1547(b) of the Code, 75 Pa.C.S. § 1547(b). Pappas appealed the suspension to the trial court which, after a hearing *de novo*, determined that Pappas had not been placed under arrest for driving under the influence at the time of testing, and that DOT failed to supply sufficient evidence that the breathalyzer machine was properly calibrated. Accordingly, the trial court sustained Pappas' appeal. This appeal followed.

▇▇▇ On appeal to this court,[4] DOT argues: (1) the trial court erred in concluding that Pappas had not been placed under arrest at the time of testing; and (2) the trial court erred in finding that DOT failed to establish a *prima facie* case to support the license suspension by failing to produce documentary evidence that the breathalyzer machine was properly calibrated.

▇▇▇ In order to sustain a license suspension under Section 1547(b) of the Code, DOT must establish that the driver (1) was arrested for driving under the influence of alcohol, (2) was asked to submit to the breathalyzer test, (3) refused to do so, and (4) was specifically warned that a refusal would result in the revocation of her driver's license. Once

the Commonwealth meets its burden, it is the driver's responsibility to show that her refusal was not knowing or conscious or that she was physically unable to take the test. *Department of Transportation, Bureau of Driver Licensing v. Pestock*, 136 Pa.Cmwlth. 694, 584 A.2d 1075 (1990), *petition for allowance of appeal denied*, 528 Pa. 619, 596 A.2d 801 (1991).

▇▇▇ DOT first contends that the trial court erred in determining that Pappas had not been placed under arrest for driving under the influence at the time she was asked to submit to chemical testing. For purposes of a Section 1547(b) license suspension, the question of whether a driver has been placed under arrest is a factual, rather than a legal, determination. *Department of Transportation, Bureau of Traffic Safety v. Uebelacker*, 98 Pa.Cmwlth. 436, 511 A.2d 929 (1986). No formal declaration of arrest or act of physical force is required. *Department of Transportation, Bureau of Driver Licensing v. McGrath*, 151 Pa.Cmwlth. 1, 617 A.2d 400 (1992). Rather, in determining whether a driver has been placed under arrest, the inquiry focuses on whether the driver should infer from the totality of the circumstances that she is under the custody and control of the police officer. *Id.*

▇▇▇ As a result of Pappas' performance of the field sobriety test and her reading from the portable breath test, Officer Wargo detained her, placed her in a police car and transported her to Allentown Police Headquarters. Although Officer Wargo testified that he did not formally place her under arrest, under the totality of the circumstances, Pappas had to know that she was under the custody and control of the police at the time she was asked to submit to chemical testing. Therefore, the trial court erred in determining that Pappas had not been place

---

4. In an appeal arising from a suspension of a driver's license, our scope of review is limited to determining whether the trial court's decision is supported by substantial evidence, whether there has been an error of law, or whether the decision of the trial court indicates a manifest abuse of discretion. *Department of Transportation, Bureau of Driver Licensing v. Garlan*, 121 Pa. Cmwlth. 400, 550 A.2d 873 (1988), *petition for allowance of appeal denied*, 522 Pa. 614, 563 A.2d 499 (1989). In addition, questions of credibility and conflicts in the evidence are for the trial court to resolve. *Department of Transportation, Bureau of Driver Licensing v. Ingram*, 538 Pa. 236, 648 A.2d 285 (1994). If there is sufficient evidence in the record to support the findings of the trial court, we must pay proper deference to the trial court as fact finder and affirm. *Id.*

under arrest for purposes of the Section 1547(b) license suspension.

DOT also argues that the trial court erred in concluding that DOT failed to prove its prima facie case to support the Section 1547(b) license suspension, because it failed to establish that the breathalyzer was properly calibrated. We agree.

In order to establish a prima facie case in support of a Section 1547(b) license suspension, DOT must prove, *inter alia*, that the licensee refused to submit to chemical testing. DOT need not establish that the licensee objected to taking the test. *Yi v. Department of Transportation, Bureau of Driver Licensing*, 164 Pa.Cmwlth. 275, 642 A.2d 625 (1995). "It is well established law that where a defendant, when taking a breathalyzer test, does not exert a total conscious effort, and thereby fails to supply a sufficient breath sample, such is tantamount to a refusal to take the test." *Appeal of Budd*, 65 Pa.Cmwlth. 314, 442 A.2d 404, 406 (1982). Even a license's good faith attempt to comply with the test constitutes a refusal where the licensee fails to supply a sufficient breath sample. *Yi*.

A refusal is supported by substantial evidence where the breathalyzer administrator testifies that the licensee did not provide sufficient breath. *See Mueller v. Department of Transportation, Bureau of Driver Licensing*, 657 A.2d 90 (Pa.Cmwlth.), *petition for allowance of appeal denied*, —— Pa. ——, 665 A.2d 471 (1995) (officer's testimony that licensee did not make a "proper effort" was sufficient to meet DOT's burden regarding refusal); *Books v. Department of Transportation, Bureau of Driver Licensing*, 109 Pa.Cmwlth. 25, 530 A.2d 972 (1987) (officer's testimony that licensee did not provide sufficient breath and stopped blowing as soon as he saw the machine register was sufficient to meet DOT's burden); *Budd* (officer's testimony that licensee failed to tighten his lips around the mouthpiece of the breathalyzer was sufficient to prove refusal). If DOT establishes refusal by utilizing the testimony of the administering officer, it need not prove that the machine was in proper working con-

dition at the time of the test. *Books; Budd.* That is, once DOT establishes refusal, the operability or suitability of the breathalyzer is not at issue. *Books; Budd.*

Alternatively, DOT may establish refusal under these circumstances by presenting a printout form from a properly calibrated breathalyzer indicating a "deficient sample." *Department of Transportation, Bureau of Driver Licensing v. Lohner*, 155 Pa.Cmwlth. 185, 624 A.2d 792 (1993); *Pestock*. In this situation, proper calibration may be proven by either documentary or testimonial evidence. *See Lohner* (calibration established by stipulation); *Pestock* (calibration established by testimony of administering officer); *see also* 67 Pa.Code § 77.25(c) ("The certificate of accuracy shall be the presumptive evidence of accuracy referred to in 75 Pa.C.S. § 1547 (relating to chemical testing to determine amount of alcohol or controlled substance).").

Once DOT has presented evidence that the licensee failed to provide sufficient breath samples, refusal is presumed and the burden of proof then shifts to the licensee to establish by competent medical evidence that he or she was physically unable to perform the test. *Pestock*.

In the instant case, DOT, for the purposes of establishing refusal, introduced into evidence two printouts from the breathalyzer which indicated that Pappas provided insufficient breath samples during the chemical tests conducted by Officer Mentesana. Regarding the calibration of the machine, DOT presented the testimony of Officer Mentesana who stated that the breathalyzer had been calibrated within thirty days of the date on which it was administered to Pappas.[5] Further, although Pappas stated she had respiratory problems, no medical evidence of such problems was presented by the defense.

Notwithstanding this evidence, the trial court found that DOT failed to sustain its burden regarding refusal because DOT failed to present documentary evidence that the breathalyzer was properly calibrated, citing

5. (Notes of Testimony at 15; R.R. at 23a.)

our recent decision in *Lohner.* In this regard, the trial court stated:

> In *Lohner,* the Commonwealth Court determined that if the printout from a properly calibrated breathalyzer machine indicates a "deficient sample"; without medical proof that the licensee was unable to supply sufficient air, such "deficient sample" constitutes a *per se* refusal. Notably, in *Lohner,* the parties stipulated that the breathalyzer machine was properly calibrated.... Moreover, unlike in *Lohner,* the parties [in the instant case] did not stipulate that the breathalyzer machine was properly calibrated. The Commonwealth attempted to prove the proper calibration of the machine; however, the official record chosen to establish this fact was defective. Specifically, the official record did not contain a seal as required for authentication by 42 Pa. C.S. § 6103(a).
>
> But for the ... technical lapses of proof, the Commonwealth established a *prima facie* case of *per se* refusal. However, in the absence of these facts, the Commonwealth did not meet its statutory burden.... (Citations omitted.)

(Memorandum Opinion of Trial Court at 1–2; R.R. at 67a–68a.) Thus, the trial court construed *Lohner* as requiring DOT, in the absence of such a stipulation, to establish by documentary evidence, the proper calibration of the breathalyzer machine.

We hold, however, that the trial court misconstrued *Lohner.* The mere fact that the parties in that case stipulated to the proper calibration of the breathalyzer does not mean, as the trial court concluded, that where the parties do not so stipulate, DOT must produce documentary evidence regarding calibration. Rather, the significance of the stipulation in *Lohner* was that it relieved DOT of having to present further evidence of proper calibration, whether testimonial or documentary. Nowhere in the opinion is there even a suggestion that calibration must be proven by documentary evidence.

In fact, the *Lohner* court specifically relies on our earlier decision in *Pestock* in which DOT established proper calibration by presenting the testimony of the administering officer. Further, the *Pestock* court specifically rejected the licensee's argument that although DOT presented the testimony of the administering officer regarding the breathalyzer's proper calibration, such evidence was insufficient to prove the machine was in working order. In this regard, we explained:

> With respect to the accuracy of the machine, we note that Officer Jones testified, without objection, that the '[m]achine ran through a sequence of internal checks ... was calibrated and proven to be correct to proceed with the test.' *Pestock seems to be arguing that documentary evidence is required. However, we can find no such requirement ....*

*Pestock,* 584 A.2d at 1077 (emphasis added).

In the instant case, DOT introduced the printouts from the breathalyzer into evidence indicating that Pappas failed to supply a sufficient breath sample. DOT also established proper calibration of the breathalyzer by presenting Officer Mentesna's testimony which the trial court specifically found credible. (Finding of Fact 6.) Under the authority of *Pestock,* therefore, DOT clearly met its burden regarding refusal. Having done so, the burden shifted to Pappas to show that she was physically unable to take the test. Because Pappas failed to introduce any medical testimony showing that her alleged respiratory condition prevented her from properly performing the breathing test, it was error for the trial court to have sustained Pappas' appeal of her license suspension.

Accordingly, we reverse the order and reinstate the suspension.

### *ORDER*

NOW, January 3, 1996, the order of the Court of Common Pleas of Northampton County in the above-captioned matter is hereby reversed and the one-year suspension of the operating privileges of Stephanie H. Pappas is hereby reinstated.

KELLEY, Judge, dissenting.

I respectfully dissent.

In order to sustain a license suspension under 75 Pa.C.S. § 1547(b), DOT must establish that the driver: (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a breathalyzer test; (3) refused to do so; and (4) was specifically warned that a refusal would result in the revocation of her driver's license. *Department of Transportation, Bureau of Driver Licensing v. Ingram,* 538 Pa. 236, 648 A.2d 285 (1994); *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989); *Department of Transportation, Bureau of Driver Licensing v. Lohner,* 155 Pa.Cmwlth. 185, 624 A.2d 792 (1993). Once the Commonwealth meets its burden, it is the driver's responsibility to show that she was not capable of making a knowing and conscious refusal to take the test. *Ingram; O'Connell.*

If a driver, when taking a breathalyzer test, does not exert a total conscious effort by failing to supply a sufficient breath sample to the machine, it is tantamount to a refusal to take the test and warrants the suspension of her driver's license. *Lohner; Department of Transportation, Bureau of Driver Licensing v. Kilrain,* 140 Pa.Cmwlth. 484, 593 A.2d 932 (1991); *Department of Transportation, Bureau of Driver Licensing v. Pestock,* 136 Pa.Cmwlth. 694, 584 A.2d 1075 (1990); *Books v. Department of Transportation, Bureau of Driver Licensing,* 109 Pa.Cmwlth. 25, 530 A.2d 972 (1987); *Budd Appeal,* 65 Pa. Cmwlth. 314, 442 A.2d 404 (1982). Thus, if the printout from a properly calibrated breathalyzer machine indicates that the driver has provided a "deficient sample", without medical proof that the driver was unable to supply sufficient air, such "deficient sample" constitutes a *per se* refusal warranting suspension of the driver's license. *Lohner; Pestock.*

In establishing that Pappas had refused to submit to chemical testing as part of its *prima facie* case, DOT attempted to show that she failed to supply the breathalyzer machine with an adequate breath sample to complete chemical testing. To this end, DOT *introduced* two printouts from the machine which indicated that she provided insufficient breath samples during the chemical tests conducted by Officer Mentesana. Officer Mentesana testified that, based on these printouts, he completed a form stating that she had refused to submit to chemical testing. DOT introduced a document showing that Officer Mentesana is a certified operator of a breathalyzer machine, and Officer Mentesana stated that the machine had been calibrated within thirty days of the tests administered in this case. However, when DOT attempted to introduce a document purporting to prove certification of the breathalyzer machine, the trial court sustained a defense objection to its admission.

In general, devices which perform chemical tests of breath must be tested for accuracy and calibrated as prescribed by the regulations of the Departments of Health and Transportation. 75 Pa.C.S. § 1547(c)(1). The accuracy of a breathalyzer machine is presumed on the admission into evidence of a certificate of accuracy. 67 Pa.Code § 77.25(e). The certificate must be completed by a certified breath test operator who conducts a prescribed accuracy inspection test, must be signed and dated and must evidence an inspection test within thirty days prior to the administration of the subject test. 67 Pa.Code § 77.25(a), (b) and (e). As with accuracy tests, a certificate of calibration of a breathalyzer machine must be completed, signed and dated by the individual who performed the prescribed calibration procedure. 67 Pa.Code § 77.26(b), (e). A certificate or log showing that a breathalyzer machine was calibrated and tested for accuracy and that the machine was accurate is presumptive evidence of those facts. 75 Pa. C.S. § 1547(c)(1).

In this case, neither a certificate of accuracy nor a certificate of calibration was admitted into evidence at the trial *de novo.* The *only* evidence which indicated that Pappas had failed to supply a sufficient breath sample were the printouts from the breathalyzer machine and Officer Mentesana's reliance on these printouts. The testimony showed that Pappas complied with Officer Mentesana's instructions and provided the machine with samples of her breath when told to do so. There was no evidence which indicated that she refused to provide a full breath to the

machine, allowed air to escape from the sides of her mouth, stopped blowing in the course of the tests, or failed to tighten her lips around the machine's mouthpiece during the tests. *See, e.g., Pestock; Books; Budd.*

Questions of credibility and conflicts in the evidence are for the trial court to resolve. *Ingram; O'Connell.* If there is sufficient evidence in the record to support the findings of the trial court, we must pay proper deference to the trial court as fact finder and affirm. *Ingram; O'Connell.* Without *any* proof regarding the reliability of the breathalyzer machine, the trial court as fact finder was free to discount the evidentiary weight to be given the printouts. *Ingram; O'Connell.* In addition, it was for the trial court alone to weigh this evidence against that which indicated that Pappas had not refused to submit to chemical testing of her breath. *Ingram; O'Connell.* Therefore, unlike the majority, I cannot say that the trial court erred in determining that DOT had failed to establish a *prima facie* case to support the section 1547(b) license suspension in this case.

Accordingly, I would affirm the trial court's order sustaining Pappas' appeal.