IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicole Denise Manison            :
                                 :
            v.                   :   No. 1283 C.D. 2019
                                 :   Submitted: April 17, 2020
                                 :
Commonwealth of Pennsylvania,    :
Department of Transportation,    :
Bureau of Driver Licensing,      :
                    Appellant    :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                       FILED:  June 29, 2020


          The Commonwealth of Pennsylvania, Department of Transportation,
Bureau of Driver Licensing (PennDOT), appeals the decision of the Court of
Common Pleas of Allegheny County (trial court) sustaining the statutory appeal of
Nicole Denise Manison (Licensee) from a one-year suspension of her driving
privilege.  PennDOT imposed the restriction on Licensee in accordance with 75
Pa.C.S. §1547(b)(1)(i)[1] as a consequence of Licensee's reported refusal to submit to

---

[1] 75 Pa.C.S. §1547(b)(1)(i)  states:
     (b) Civil penalties for refusal.
     (1) If any person placed under arrest for a violation of section 3802
     is requested to submit to chemical testing and refuses to do so, the
     testing shall not be conducted but upon notice by the police officer,
     the department shall suspend the operating privilege of the person
     as follows:
     (i) Except as set forth in subparagraph (ii), for a period of 12 months.

chemical testing in connection with her arrest for driving under the influence (DUI) in violation of 75 Pa.C.S. §3802.[2] PennDOT argues that the trial court erred as a matter of law in sustaining Licensee's statutory appeal because Licensee could not raise an affirmative defense and failed to satisfy her burden of proof. We reverse the decision of the trial court.

---

75 Pa.C.S. §1547(b)(1)(i).

[2] 75 Pa.C.S. § 3802(a), (g), in relevant part, states:

Driving under influence of alcohol or controlled substance.
(a) General impairment. (1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.
(2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.
…
(g) Exception to two-hour rule. — Notwithstanding the provisions of subsection (a), (b), (c), (e) or (f), where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle is sufficient to establish that element of the offense under the following circumstances:
(1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and
(2) where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained.

75 Pa.C.S. § 3802(a), (g).

## I.    Background

On March 9, 2019, Licensee was involved in a traffic accident in Pittsburgh, Pennsylvania.  Reproduced Record (R.R.) at 18a.  Upon arriving at the scene, police officers handcuffed Licensee and transported her to the police station under suspicion of DUI.  *Id.*  At the police station, Licensee was placed in a holding cell for "more than 20 minutes" where she was monitored to ensure that she did not consume food or beverage.  R.R. at 25a.

After the 20-minute waiting period, Licensee was subjected to field sobriety tests within the office of Officer Rachmiel Gallman.  R.R. at 26a.  Both Officer Gallman and Officer Adam Thimons, Licensee's arresting officer, were present for the administration of the field sobriety tests.  *Id.*

Following the completion of the field sobriety tests, Licensee was asked to submit to a breath test, the results of which are the subject of this appeal.  PennDOT's Br. at 6.  Officer Gallman, who is assigned to the Special Deployment Division in the Impaired Driver Unit, has been certified to administer breath tests "approximately since 2017."  *Id.*  At trial on April 29, 2019, Licensee's counsel stipulated that the device that was used for his client's breath testing, a DataMaster DMT, was properly certified and accurate.  R.R. at 22a.

During the administration of the test, Licensee sat in a wooden chair next to Officer Gallman's desk.  PennDOT's Br. at 7.  Officer Gallman testified that he read the Implied Consent warnings to Licensee verbatim as printed on the DL-26

form prior to administering the breath test.[3]  *Id.*; R.R. at 55a.  In contrast, at trial, Licensee testified that Officer Gallman read the DL-26 warnings following the completion of the breath test.  R.R. at 44a.  Licensee's signature appears on the DL-26 form and Licensee testified at trial that she signed the form.  R.R. at 43a, 55a.

Officer Gallman testified at trial that he always gives the same instructions at the commencement of breath tests: "I use an example.  I say, it's like chocolate milk.  I want you to blow bubbles into the chocolate milk.  I don't want you to drink the chocolate milk."  R.R. at 29a.  The breath testing instrument requires that the testing subject provide two consecutive breath samples to be successful.  *Id.* For each individual breath test, the instrument gives the testing subject 120 seconds to provide a sample.  PennDOT's Br. at 7.

Licensee's first breath test was incomplete, meaning that Officer Gallman was required to physically enter the test as "not a refusal" on the instrument. R.R. at 31a-32a.  Officer Gallman proceeded with administering the second breath test to Licensee, which registered as a "suck back error."  R.R. at 33a.  In regards to the suck back error, Officer Gallman testified that: "[Licensee] drank the chocolate milk.  She didn't blow the bubble."  *Id.*  When asked why Licensee was given two opportunities to provide a breath sample—both of which resulted in an insufficient sample—Officer Gallman explained that, "I give everyone a second attempt [to take

---

[3] A DL-26A form is a form provided by PennDOT that police officers are required to read to individuals suspected of DUI who are asked to submit to chemical testing.  These individuals must also sign the form.  Most relevant to this case, the form explains: "If you refuse to submit to the breath test, your operating privilege will be suspended for at least 12 months."  R.R. at 55a.

the test]."[4]    R.R. at 37a.    At trial, Licensee's counsel stipulated that Licensee provided two insufficient samples and that he did not object to admission of the results.  R.R. at 30a; *See* R.R. at 56a-57a.

Officer Gallman further testified that Licensee did not inform him of any medical conditions that would have prevented her from taking a breath test.  R.R. at 35a.  However, on the officer's observation impairment form, which Licensee's counsel required Officer Gallman to read at trial, Licensee had indicated that she has asthma and an associated inhaler.  *Id.*  Officer Gallman stated at trial that "having asthma is not a reason not to be able to give a breath sample."  R.R. at 35a-36a.

Licensee testified at trial that following the completion of the breath test, she did not receive any indication from Officer Gallman or other police personnel that she had failed the breath test.  R.R. at 44a-45a.  She believed in good faith that the breath samples that she had provided to Officer Gallman were sufficient. *Id.*  Based on her understanding of the DL-26 form and Officer Gallman's instructions, she did not believe that her active participation in the breath test constituted a refusal.  R.R. at 44a.  Licensee admitted at trial that while she should not have been driving at the time of her arrest, she remembered everything that happened on the day in question.  R.R. at 42a.

---

[4] A licensee's failure to provide two consecutive breath tests upon a request to submit to chemical testing constitutes a refusal under 75 Pa.C.S. §1547(b)(1)(i).  Officer Gallman's testimony indicates that regardless of the outcome of a licensee's first attempt at providing a breath sample, he does not record a refusal without offering a second attempt.  Therefore, a licensee is not immediately penalized with a refusal after an insufficient first attempt.  This pattern indicates that, in the present case, while Licensee provided an insufficient first breath sample, she was offered the opportunity to proceed.  If she had successfully provided a sufficient breath sample on her second attempt, Officer Gallman would have administered the chemical testing a third time to potentially allow two consecutive, sufficient breath samples to be recorded.  *See* R.R. at 37a.

The testimonies of Officer Gallman and Licensee at trial differ in regard to details of the administration of the breath test. In addition to Licensee stating that Officer Gallman had her read and sign the DL-26 form *after* she submitted to the breath test, Licensee also testified that she warned Officer Gallman of her asthma prior to starting the breath test. R.R. at 42a, 44a. Licensee stated that she told Officer Gallman that she had an inhaler for her asthma in her purse. R.R. at 43a. Licensee did not, however, tell Officer Gallman that she thought she could not properly take the test due to her asthma. *Id.* Further, Licensee testified that Officer Gallman came to the cell where she was being held after the breath test to ask if she had asthma and if she had an inhaler. *Id.* However, Officer Gallman stated at trial that he did not personally observe any indication of Licensee's breathing problems, *e.g.*, wheezing, gasping for breath, during her time in police custody. R.R. at 34a.

Because Licensee did not provide two consecutive sufficient breath samples for the breath test, Officer Gallman treated Licensee's conduct as a refusal as a matter of law. R.R. at 49a. If an individual is arrested under suspicion of DUI and asked to submit to chemical testing, refusal to comply will result in an automatic loss of vehicle operating privileges for a 12-month period. 75 Pa.C.S. §1547(b)(1)(i). Therefore, as a result of Licensee's alleged refusal, Licensee's driver's license was suspended by PennDOT for a subsequent 12-month period. R.R. at 45a. Licensee testified that she first received notice of the license suspension via mail from PennDOT; this notice was unexpected given that she was under the impression that she complied and submitted to the breath test. *Id.*

Licensee filed a statutory appeal from the 12-month suspension of her driver's license due to her alleged refusal to submit to chemical testing. The trial court entered an Order sustaining the statutory appeal, finding that PennDOT failed

6

to establish that Licensee refused to take a chemical breath test. R.R. at 76a. PennDOT now appeals to this Court.

## II. Discussion

On appeal,[5] PennDOT argues that the trial court erred as a matter of law in sustaining Licensee's statutory appeal on the basis that she did not make an "affirmative act" refusing the request for the breath test. PennDOT also asserts that Licensee could not raise the affirmative defense of physical incapability of completing a breath test because she did not inform Officer Gallman of her asthma nor did Officer Gallman perceive breathing problems. Finally, PennDOT claims that Licensee failed to satisfy her burden of proof that she was physically incapable of performing the breath test.

## A. "Affirmative Act"

In order to establish a prima facie case in support of a Section 1547(b) license suspension, PennDOT must prove that the licensee refused to submit to chemical testing.[6] *Pappas v. Dep't of Transp., Bureau of Driver Licensing*, 669 A.2d

---

[5] "Our review is limited to determining whether the trial court's findings are supported by substantial evidence, whether the trial court committed any errors of law and whether it abused its discretion." *Rawson v. Dep't of Transp., Bureau of Driver Licensing*, 99 A.3d 143, 147 n.2 (Pa. Cmwlth. 2014).

[6] To sustain the one-year suspension of Licensee's driving privilege under 75 Pa.C.S. §1547(b)(1)(i), PennDOT must demonstrate that Licensee: 1) was arrested for a violation of 75 Pa.C.S. §3802 by a police officer who had reasonable grounds to believe she was operating or was in actual physical control of a vehicle while she was in violation of 75 Pa.C.S. §3802; 2) was asked to submit to a chemical test; 3) refused to do so; and 4) was specifically warned that a refusal would result in the suspension of her driving privilege and would result in her being subject to the penalties set forth in 75 Pa.C.S. §3804(c) (relating to penalties) if she was later convicted of violating 75 Pa.C.S. §3802 (a)(1). *Martinovic v. Dep't of Transp., Bureau of Driver Licensing*, 881 A.2d 30, 34 (Pa. Cmwlth. 2005).

7

504 (Pa. Cmwlth. 1996). However, PennDOT is not required to establish that the licensee objected to taking the test. *Yi v. Dep't of Transp., Bureau of Driver Licensing*, 642 A.2d 625 (Pa. Cmwlth. 1994). "The law is well settled that even a good faith effort to complete the test constitutes a refusal where the motorist fails to supply a sufficient breath sample." *Olbrish v. Dep't of Transp., Bureau of Driver Licensing*, 619 A.2d 397, 398 n.1 (Pa. Cmwlth. 1992).

In the present case, PennDOT argues that the trial court erred in finding that Licensee did not refuse the request for a breath test. The trial court stated: "It is a factual question as to whether or not [Licensee] refused chemical testing. A refusal is an affirmative act. Here, instead of refusing, [Licensee] unequivocally consented and attempted to properly use the DataMaster DMT Breathalyzer." Trial Ct. Op., 12/19/2019 at 2.

Licensee testified at trial that she cooperated with Officer Gallman and–to the best of her knowledge–completed the breath testing as requested. R.R. at 45a. Further, she described that Officer Gallman did not provide her with any indication that she had not sufficiently completed "[t]wo consecutive actual breath tests, without a required waiting period between the two tests" as required by law. R.R. at 45a; *see Lucas v. Dep't of Transp., Bureau of Motor Vehicles*, 854 A.2d 639, 643 (Pa. Cmwlth. 2004). However, this Court has consistently held that, as a matter of law, a licensee's failure to complete a breath test is a refusal of chemical testing. *See Shiring v. Dep't. of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 1073 C.D. 2018, filed May 14, 2019), 2019 Unpub. LEXIS 281.[7]

---

[7] This case is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

Whether a licensee has refused a request for chemical testing is a question of law based upon the facts as found by the trial court. *Gregro v. Dep't of Transp., Bureau of Driver Licensing*, 987 A.2d 1264, 1267 (Pa. Cmwlth. 2010). The trial court found that Licensee submitted to breath testing and attempted to provide two consecutive breath tests. R.R. at 78a. As a result, the trial court ultimately decided that Licensee's actions did not constitute a refusal under 75 Pa.C.S. §1547(b)(1)(i). *Id.* In making its determination, the trial court consulted Funk & Wagnalls 1982 *New Comprehensive International Dictionary of the English Language. Id.* Quoting this reference material in his opinion, the Honorable Lester G. Nauhaus stated: "The word 'refusal' is defined as '[t]he act of refusing; denial of what is asked.' The word 'refuse' is defined as '[t]o decline to do, permit, take or yield.'" R.R. at 78a-79a. However, total reliance on a dictionary definition by the trial judge without due consideration of relevant precedence is an error of law.

"Once [PennDOT] has presented evidence that the licensee failed to provide sufficient breath samples, refusal is presumed and the burden of proof then shifts to the licensee to establish by competent medical evidence that he or she was physically unable to perform the test." *Pappas*, 669 A.2d at 508 (citing *Dep't of Transp., Bureau of Driver Licensing v. Pestock*, 584 A.2d 1075 (Pa. Cmwlth. 1990)). The failure of Licensee to provide two consecutive actual breath tests resulted in a refusal under the law. Refusal does not constitute an "affirmative act" for the purposes of license suspension under Section 1547(b)(1)(i). Therefore, it was an error of law for the trial court to reverse Licensee's driving suspension based on a perceived lack of an "affirmative act" of refusal.

## B. Affirmative Defense and Licensee's Inaction

PennDOT also argues that even if Licensee was physically incapable of completing a breath test, she could not raise an affirmative defense because she did not inform Officer Gallman of any purported breathing problems caused by her asthma, and Officer Gallman did not observe any breathing problems himself. In its opinion, the trial court found that Officer Gallman was aware of Licensee's asthma and the presence of an inhaler in her purse. Further the trial court stated: "… [Licensee] fulfilled her responsibility of informing the officer that she had asthma since it was not obvious, and once she informed the officer then an alternative test should have been administered." R.R. at 79a. PennDOT challenges the decision of the trial court as an error of law.

As PennDOT established its *prima facie* case against Licensee under 75 Pa.C.S. §1547(b)(1)(i), the burden of proof shifted to Licensee to prove: 1) that she was physically incapable of completing that chemical breath test; or 2) that her refusal was not knowing and conscious. *Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010). Licensee did not attempt to prove that she unknowingly or unconsciously refused the breath test, therefore, a successful affirmative defense would necessarily require Licensee to show physical incapacity.[8]

---

[8] PennDOT raises the issue of Licensee's affirmative defense on appeal. However, at trial, Licensee did not attempt to raise an affirmative defense of physical incapability. Licensee's counsel stated, "[W]e are not presenting a defense that she couldn't do [the breath test]. She is testifying she did the test and passed it." R.R. at 48a. However, Licensee did testify at trial to having asthma and an inhaler for her condition. This Court addresses the issue of Licensee's affirmative defense based on Licensee's relevant testimony at trial regarding her medical condition. Although the record suggests that Licensee did not directly raise physical incapability as an affirmative defense, this Court evaluates the issue of an affirmative defense within the scope

If a licensee fails to inform the police officer administering a breath test that she suffers from a medical condition preventing successful completion of the test, the licensee is not permitted to present testimony to establish that a medical condition allegedly existed at the time of the test. *Finney v. Dep't of Transp., Bureau of Driver Licensing*, 721 A.2d 420, 424 (Pa. Cmwlth. 1998). At trial, Licensee was asked on cross-examination about her purported asthma and associated inhaler:

> Q: [W]hen you were asked to provide a breath sample for the first of these two tests that were conducted, did you ever ask the officer if you could use the inhaler that you had in your purse while performing the breath test?
> A: No.
> Q: At any point after the first breath test did you ask the officer if you could use the inhaler to perform a second breath test?
> A: No.
> Q: So at no point before, during either of the two breath tests or between the two breath tests did you ask the officer for the opportunity to use it while performing the test?
> A: No.

R.R. at 46a.

Officer Gallman also testified at trial that Licensee had not informed him of any medical condition that would have adversely affected her ability to provide the two valid breath samples prior to the administration of the first breath test.[9] R.R. at 34a. He further explained that Licensee did not notify him of a medical

---

of the issue as raised by PennDOT. Licensee did not submit a brief to this Court. Therefore, we are unable to clarify Licensee's intention regarding the issue of an affirmative defense.

[9] While Officer Gallman testified that he was not aware of any medical condition that would prevent Licensee from providing two sufficient breath samples, the record indicates that

condition between the administration of the first and second tests or during either test. *Id*. Finally, Officer Gallman stated that he did not hear Licensee wheeze or gasp during the breath tests, which, if observed, could have indicated that Licensee had a medical condition such as asthma. *Id.*

Licensee was under an obligation to prove that she was physically incapable of providing two consecutive actual breath samples in order to raise an affirmative defense to a refusal under 75 Pa.C.S. §1547(b)(1)(i). Licensee testified at trial that Officer Gallman inquired whether Licensee had an inhaler after she had been returned to the police station holding cell following the breath testing. *See* R.R. at 48a. However, Licensee did not alert Officer Gallman to the effect of her medical

---

Licensee disclosed her asthma and use of an inhaler on the officer's observation impairment form. R.R. at 35a. At trial, Licensee's attorney questioned Officer Gallman about this information:

> Q: Do you have your officer's observation impairment form? I saw a copy of it sitting in the file here. Do you want to take a look at that.
> A: Yes. She says she has asthma and she has an inhaler. But having asthma is not a reason not to be able to give a breath sample.
> Q: And you see it right there it says asthma and inhaler, right?
> A: Yes.
> Q: Do you recall talking to Officer Thimons about the fact that her inhaler was in her purse and not available to her during this test?
> A: I don't recall.
> Q: Is it possible that you had a conversation with him where you said she was trying to take the test and maybe she needed her inhaler?
> A: No.
> Q: That's not possible or you don't recall?
> A: I don't recall.

R.R. at 35a-36a. Therefore, while Licensee did not vocalize an inability to perform the breath test due to her asthma to Officer Gallman immediately prior to the administration of the chemical breath testing, ambiguity exists as to whether Officer Gallman was aware of Licensee's medical condition and if it prevented Licensee from completing chemical breath testing.

condition on her ability to complete breath testing prior to the administration of the breath tests. If a licensee's incapability to take a breath test is not obvious, then the licensee must inform the police officer of any medical condition causing such incapability. *Finney*, 721 A.2d at 424. If a licensee does not inform the police officer of her medical condition prior to the test administration, then the licensee cannot raise an affirmative defense of physical incapability at a later time. *See id.*

Although Licensee did not verbally advise Officer Gallman of her asthma immediately prior to the administration of the breath testing, she did not attempt to raise an affirmative defense at trial to the suspension of her driver license under 75 Pa.C.S. §1547(b)(1)(i). Further, it is unclear whether Officer Gallman was made aware of Licensee's asthma through either the officer's observation impairment form or a discussion with Licensee. The trial court found that "[Licensee] fulfilled her responsibility of informing the officer that she had asthma. . . ." Trial Ct. Op., 12/19/2019 at 4. "Questions of credibility and conflicts in the evidence presented are for the trial court to resolve, not our appellate courts." *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989). Therefore, the trial court was within its discretion to make a fact determination in favor of Licensee. As Licensee's raising of an affirmative defense is not at issue within this appeal, this Court will not disturb the trial court's fact finding on this matter.

### C. Burden of Proof

Finally, PennDOT argues that even if Licensee had appropriately informed Officer Gallman about her asthma prior to the administration of the breath test and was accordingly able to present an affirmative defense to her license suspension under 75 Pa.C.S. §1547(b)(1)(i), she did not meet her burden of proof on

13

the affirmative defense of physical incapability. PennDOT asserts that Licensee failed to offer any competent medical evidence to confirm her asthma diagnosis. Additionally, PennDOT claims that Licensee did not satisfy her burden of proof for physical incapability because she did not demonstrate that her alcohol consumption did not cause or contribute to her inability to complete the breath test.

A licensee's failure to blow sufficient air to successfully complete a breath test constitutes a refusal absent medical evidence to establish a physical inability to provide sufficient breath. *Quick v. Dep't of Transp., Bureau of Driver Licensing*, 915 A.2d 1268, 1271 (Pa. Cmwlth. 2007); *Dep't of Transp. v. Berta*, 549 A.2d 262, 264 (Pa. Cmwlth. 1988). This Court previously held in *Pappas* that "[b]ecause Pappas failed to introduce any medical testimony showing that her alleged respiratory condition prevented her from properly performing the breath test, it was error for the trial court to have sustained Pappas' appeal of her suspension." *Pappas*, 669 A.2d at 509. In the present case, not only did Licensee not inform Officer Gallman about her inability to perform breath testing due to her asthma prior to or during the administration of the breath tests on March 9, 2019, but Licensee failed to provide medical evidence at trial to corroborate her asthma diagnosis and inhaler prescription. *See* R.R. at 47a. Therefore, Licensee did not meet her burden of proof to raise an affirmative defense of physical incapability due to her medical condition.

This Court has also previously held that failure to provide a sufficient breath sample, whether or not a good faith effort was made to do so, constitutes a refusal *per se* to take the test unless the licensee can establish that the failure was due to a physical inability unrelated to the ingestion of alcohol or drugs. *Sweeney v. Dep't of Transp., Bureau of Driver Licensing*, 804 A.2d 685, 687 (Pa. Cmwlth.

14

2002). Although Licensee testified at trial that despite consuming "two or three glasses of wine" she had a "clear recollection" of the events of March 9, 2019, Licensee did not provide any evidence to demonstrate that she experienced a physical inability unrelated to her intoxication that would have prevented her from providing two consecutive actual breath samples. *See* R.R. at 45a. Therefore, Licensee did not meet her burden of proof to raise an affirmative defense of physical inability to her license suspension under 75 Pa.C.S. §1547(b)(1)(i).

### III. Conclusion

For the foregoing reasons, this Court holds that the trial court erred in sustaining Licensee's statutory appeal of her driver's license suspension. Therefore, we reverse the decision of the trial court and reinstate the one-year suspension of Licensee's driving privilege.

_____<br>
J. ANDREW CROMPTON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicole Denise Manison          :
                                           :

         v.                 :    No. 1283 C.D. 2019

                                           :

Commonwealth of Pennsylvania,    :
Department of Transportation,     :
Bureau of Driver Licensing,       :
                   Appellant   :

# **O R D E R**

**AND NOW**, this 29th day of  June 2020, we **REVERSE** the decision of the Court of Common Pleas of Allegheny County and **REINSTATE** the one-year suspension of Nicole Denise Manison's driving privilege.

_____
J. ANDREW CROMPTON, Judge