511 A.2d 929

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant *v.* James G. Uebelacker, Appellee.

Submitted on briefs March 10, 1986, to Judges CRAIG, DOYLE and PALLADINO, sitting as a panel of three.

*Michael R. Deckman,* Deputy Chief Counsel, with him, *Spencer A. Manthorpe,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellant.

*Richard Mancini,* for appellee.

OPINION BY JUDGE DOYLE, June 30, 1986:

The Pennsylvania Department of Transportation, Bureau of Traffic Safety (DOT) appeals from an order of the Court of Common Pleas of Beaver County which vacated DOT's order suspending the operating privileges

of James G. Uebelacker (Appellee) for his refusal to submit to a blood alcohol test pursuant to Section 1547(b) of the Vehicle Code, 75 Pa. C. S. §1547(b), (Code).

The trial court based its decision entirely on the testimony of Assistant Police Chief Jack E. Mintier of the South Beaver Township Police Department. Officer Mintier stated that on September 24, 1983, he arrived at the scene of a two car accident, where he found Appellee, who admitted that he had been operating one of the vehicles involved, standing alongside a third, uninvolved vehicle, in a "very relaxed type of attitude." The officer also testified that, upon determining that both operators required medical attention, he radioed for an ambulance and then followed the ambulance to the hospital, where he waited for Appellee to be examined. His testimony regarding the events at the hospital was a follows:

A. At the hospital, after he was examined, I went into where the bed was, where he was at, and advised him that he was going to be arrested for driving under the influence of alcohol and I would like him to submit to a blood test. And, at that time, he had asked me to explain to him what would and wouldn't happen. So I explained to him if he did not take the blood test, his operator's privileges would be suspended and that the blood test is to verify the amount of alcohol content in his blood.

Q. And what was his response to your request to take a blood test?

A. He refused to take the test.

Q. Did you have any further contact with Mr. Uebelacker?

A. Mr. Uebelacker, I just talked to him briefly after, and then he had me to go over the fact I

was going to arrest him for DUI, and, at that time, I talked with his wife, who was also at the hospital, and, of course, he was released.

Q. Did you, in fact, arrest him for DUI?

A. Yes, sir, I did.

The court of common pleas concluded that although Appellee had been informed twice that he was *going to be* placed under arrest, no such arrest actually occurred prior to the request that he submit to a chemical test. DOT now argues that the court erred in this conclusion.

Our scope of review where the lower court hears the matter *de novo* is limited to a determination of whether or not the court based its findings of fact on substantial competent evidence or committed an error of law. *Phillips v. Commonwealth,* 84 Pa. Commonwealth Ct. 217, 478 A.2d 958 (1984); Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704.

An operator's driving privileges may be suspended for refusing to submit to a chemical test where the operator (1) was placed under arrest for driving under the influence of alcohol in a situation where the arresting officer had reasonable grounds to believe the operator was driving while intoxicated; (2) was asked to submit to a test; (3) refused to so do; and (4) was warned that his license would be revoked if he refused to take the test. *See Phillips.* The question of whether or not a driver has been "placed under arrest" for purposes of Section 1547(b) of the Code is a factual, rather than a legal determination, and all that is necessary is that the driver be under the custody and control of the person effecting the arrest. *Gresh v. Department of Transportation, Bureau of Traffic Safety,* 76 Pa. Commonwealth Ct. 483, 464 A.2d 619 (1983).

Appellee asserts that the relevant inquiry in this case is whether any act occurred which should have conveyed to him, as the allegedly arrested party, the

reasonable impression that he was subject to the officer's custody and control. For this proposition, he cites *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 *cert. denied,* 375 U.S. 910 (1963), and a line of cases decided thereunder, *e.g., Commonwealth v. Silo,* 480 Pa. 15, 389 A.2d 62 (1978), *cert. denied,* 439 U.S. 1132 (1979); *Commonwealth v. Benson,* 280 Pa. Superior Ct. 20, 421 A.2d 383 (1980). The *Bosurgi* test has been incorporated into the definition of arrest under Section 1547(b) of the Code. *See Glass v. Department of Transportation, Bureau of Traffic Safety,* 460 Pa. 362, 333 A.2d 768 (1975); *Commonwealth v. Gresh,* 76 Pa. Commonwealth Ct. 483, 464 A.2d 619 (1983). In further refining the test, however, we have consistently held that no formal declaration of arrest or act of physical force is required. *Gresh.*

Applying this test to the facts found by the trial court, we cannot agree with that court's conclusion that no arrest occurred prior to Officer Mintier's request that Appellee take a blood test. The court found that the officer radioed for an ambulance, followed the ambulance to the hospital, waited until Appellee was confined to bed, and then told him he was going to be placed under arrest for driving under the influence of alcohol, all of which demonstrate a most responsible approach to the situation presented. Surely the reasonable impression of Appellee should have been that he was subject to the officer's custody and control at that point in time. It was not necessary for the officer to use the exact words, "You are now under arrest." Given the totality of the circumstances, we think a reasonable interpretation of the officer's words and actions would have been that he was going to place Appellee under arrest, not sometime in the future, but *immediately.* Anything the officer may have said to Appellee regarding arrest *after* Appellee had refused to submit to the blood test is

irrelevant to the question of whether or not the Appellee was under arrest at the time the refusal was made.

We will reverse the trial court and reinstate DOT's suspension of Appellee's driving privileges.

ORDER

Now, June 30, 1986, the order of the Court of Common Pleas of Beaver County, No. 1504 of 1983, dated January 12, 1984, is hereby reversed. The order of the Pennsylvania Department of Transportation is reinstated.