547 A.2d 877

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant *v.* John Jones, Jr., Appellee.

*Christopher J. Clements,* Assistant Counsel, with him, *Harold H. Cramer,* Assistant Chief Counsel, and *John L. Heaton,* Chief Counsel, for appellant.

*John Jones, Jr.,* appellee, for himself.

OPINION BY JUDGE PALLADINO, September 26, 1988:
The Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Court of Common Pleas of Bucks County (trial court), which reversed DOT's suspension of John J. Jones, Jr.'s (Appellee) driver's license for one year for refusing to submit

to a blood alcohol test pursuant to section 1547(b) of the Vehicle Code (Code), 75 Pa. C. S. §1547(b).

On May 10, 1986, Appellee was involved in a motor vehicle accident. A police officer (officer) arrived at the scene and observed Appellee complaining of injury. Medical personnel arrived and transported Appellee to a hospital. There, the officer read Appellee his *Miranda* rights, advised him of implied consent laws and requested that he submit to a blood alcohol test. Appellee refused the test. As a result of Appellee's refusal, DOT suspended his driving privileges for one year.

Appellee appealed to the trial court asserting that he had not been arrested prior to the request that he submit to the blood test. The trial court agreed with Appellee's assertion and found as a fact that Appellee had not been arrested prior to the chemical test request.[1] The trial court, accordingly, reversed the suspension. On appeal to this court,[2] DOT contends that the trial court's finding of fact is not supported by substantial evidence.

DOT has the burden of proving that a driver was placed under arrest for driving under the influence of alcohol. *Gresh v. Department of Transportation, Bureau of Traffic Safety,* 76 Pa. Commonwealth Ct. 483, 464 A.2d 619 (1983). Section 1547 requires that the driver be under arrest at the time chemical testing is

---

[1] The question of whether a driver has been placed under arrest for purposes of section 1547(b) of the Code is a factual determination. *Department of Transportation, Bureau of Traffic Safety v. Uebelacker,* 98 Pa. Commonwealth Ct. 436, 511 A.2d 929 (1986).

[2] Our scope of review in cases of this nature is limited to a determination of whether findings of fact are supported by competent evidence, errors of law have been committed or the common pleas court's decision demonstrates a manifest abuse of discretion. *Lewis v. Commonwealth,* 114 Pa. Commonwealth Ct. 326, 538 A.2d 655 (1988).

refused. No magic words are required: "[I]t is only necessary that the driver be under the custody and control of the person effecting the arrest." *Gresh*, 76 Pa. Commonwealth Ct. at 487, 464 A.2d at 622 (1982). *See Glass v. Department of Transportation, Bureau of Traffic Safety*, 460 Pa. 362, 333 A.2d 768 (1975) (defining the physical act of arrest as "any act that indicates an intention to take [a person] into custody and that subjects him to the actual control and will of the person making the arrest.")

DOT contends that the bedside confrontation, during which the officer read Appellee his *Miranda* rights and the implied consent law, was sufficient to establish custody and control necessary for the arrest. In support of its position, DOT relies on *Department of Transportation, Bureau of Traffic Safety v. Uebelacker*, 98 Pa. Commonwealth Ct. 436, 511 A.2d 929 (1986), wherein we held that the motorist should have been under the impression that he was under the officer's custody and control because, prior to the officer's request that the driver submit to chemical testing, the officer: 1) radioed for an ambulance; 2) followed the ambulance; 3) waited until Appellee was confined to bed; and 4) told the motorist he was going to be arrested for driving under the influence. Uebelacker argued he was under the impression that he was going to be arrested in the future. We stated that, under the circumstances, the officer's use of the language "going to be" was not determinative of the issue:

> Given the totality of the circumstances, we think a reasonable interpretation of the officer's words and actions would have been that he was going to place Appellee under arrest, not sometime in the future, but *immediately*.

*Id*. at 440, 511 A.2d at 931 (1986) (emphasis in original). Finally, we emphasized that the relevant in-

quiry in these cases is whether, at the time of the refusal, the driver is under arrest. Accordingly, we reversed the trial court's decision and reinstated DOT's suspension of Uebelacker's operating privileges.

Application of the *Uebelacker* rationale to the present facts requires the same reversal and reinstatement of DOT's suspension. The trial court attempted to distinguish *Uebelacker* by noting that, in the present case, there is nothing to indicate that the officer radioed for an ambulance or followed the ambulance to the hospital. However, as we view this type of case, the issue is not whether the facts exactly parallel an earlier decision. Rather, the issue is whether, under the totality of the circumstances, the reasonable impression of the driver should have been that he was subject to the officer's custody and control at the time he refused the chemical test.

Viewing the present case in this light, we believe the reasonable impression of Appellee should have been that he was subject to the officer's custody and control, notwithstanding the fact that both Appellee and the officer were at the hospital. The officer's undisputed testimony was that he responded to a radio call of the accident at 3:05 A.M., N.T. at 4-5, he spoke with Appellee at the scene, N.T. at 5, and "an ambulance was called . . . to the accident scene." *Id.* The officer further testified that at approximately 4:00 A.M. he went to the emergency room of the medical center to which Appellee had been taken, and that he approached Appellee's bed and read him the *Miranda* warnings, and then asked him to submit to a blood test. Appellee did not respond to the officer's request, and it was explained to Appellee that he would lose his license if he refused. N.T. at 6-7. At the hearing, the following colloquy, between the trial court and the officer, took place:

Q.  When you read him his *Miranda* warnings did you tell him why you were reading those warnings?

A.  I advised him we were going to place him under arrest for drunk driving.

N.T. at 7.

Based on the foregoing, we find the present case indistinguishable, in all material respects, from *Uebelacker*.[3] Accordingly, the order of the trial court is reversed and the suspension imposed by DOT is reinstated.

ORDER

AND NOW, September 26, 1988, the order of the Court of Common Pleas of Bucks County in the above-captioned case is reversed, and the suspension imposed by the Department of Transportation, Bureau of Driver Licensing is reinstated.

---

[3] Other recent and somewhat similar cases *are* distinguishable. In *Woods v. Department of Transportation, Bureau of Traffic Safety*, 116 Pa. Commonwealth Ct. 294, 541 A.2d 846 (1988); and *Department of Transportation, Bureau of Driver Licensing v. Nazzaro*, 112 Pa. Commonwealth Ct. 543, 535 A.2d 761 (1988), each officer testified he never placed the motorist under arrest. In *Department of Transportation, Bureau of Driver Licensing v. Kennedy*, 105 Pa. Commonwealth Ct. 588, 525 A.2d 31 (1987), the officer stated in his report that he told the motorist " 'that even if he refused *he would still be arrested* for driving under the influence.' " *Id.* at 591, 525 A.2d at 33 (emphasis in original). The officer testified in court that the motorist was free to go and that his statement about arrest referred to future action. *Id.*