647 A.2d 971

**Charles WELCOME, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 22, 1994.

Decided Sept. 1, 1994.

Stanley J. Ellenberg, for appellant.

Timothy P. Wile, Asst. Counsel In–Charge Appellate Section, for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN, Judge.

Charles Welcome (Licensee) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) sustaining the suspension of his operating privilege imposed by the Department of Transportation, Bureau of Driver Licensing (DOT) pursuant to 75 Pa.C.S. § 1547(b)(1) (refusal to

submit to chemical testing).[1]  The trial court determined [2] that for the purpose of section 1547(b)(1), Licensee was "arrested" and thus violated the implied consent law.  We disagree and reverse the trial court's order.

■  On appeal,[3] Licensee asks us to determine whether the trial court erred in concluding that he was "arrested." [4]

Here, Pennsylvania State Trooper Eric M. Barrall testified that on the evening of September 6, 1993, he was dispatched to investigate an automobile accident at the intersection of Chenney Road and Patricia Lane near Media, Pennsylvania. (R.R. at 6a.)  Upon arriving at the scene, Trooper Barrall

1.  The "Implied Consent Law," which is found at 75 Pa.C.S. § 1547(a) and (b), provides in relevant part:

(a) General Rule.—Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol....

(b) Suspension for refusal.—

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

2.  Although the trial court did not file a formal opinion, the trial court's reasons for its decision appear of record.  Pa.R.A.P. 1925.

3.  In reviewing a driver's license suspension case, our scope of review is limited to determining whether the findings of fact of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion in reaching its decision. *Department of Transportation, Bureau of Driver Licensing v. Jennings,* 156 Pa.Commonwealth Ct. 219, 627 A.2d 211 (1993).

4.  Licensee also asks us to determine whether he made a knowing and conscious refusal to submit to a blood alcohol test.  However, we do not need to address this question because of our disposition of the first issue.

encountered Licensee, who had driven his car into a telephone pole in an attempt to avoid colliding with another vehicle. (R.R. at 6a.) The car's occupants, including Licensee and his two children, suffered injuries and were transported to Riddle Memorial Hospital by ambulance. (R.R. at 6a.) Trooper Barrall remained at the scene for over an hour then drove to the hospital.[5] (R.R. at 13a.) At the hospital, Trooper Barrall interviewed Licensee regarding the accident, detected a moderate odor of alcohol upon his breath and noticed that Licensee's eyes were bloodshot and glassy. (R.R. at 8a.) When asked if he had been drinking, Licensee answered that he had a couple of drinks earlier that day. (R.R. at 8a.) Trooper Barrall then told Licensee that he had the right to remain silent, informed Licensee of the implied consent law and requested that he submit to a blood alcohol test. (R.R. at 8a–10a.) Trooper Barrall testified that Licensee neither acquiesced nor refused to take the blood test, but only commented that he was concerned about his children and losing his license. (R.R. at 10a, 11a.) The same exchange occurred twice more. (R.R. at 16a.) Finally, Trooper Barrall informed Licensee that he could no longer wait for Licensee's consent due to other duties to which he had to attend. (R.R. at 17a.) Accordingly, Trooper Barrall noted that Licensee refused to submit to a blood alcohol test and then left the hospital without charging Licensee with drunk driving. (R.R. at 17a.)

Licensee, the only other witness to testify, briefly stated that Trooper Barrall never told him that he was under arrest,

---

**5.** Trooper Barrall's testimony is contradictory as to the amount of time that transpired between his arrival at the accident and his arrival at the hospital, where he requested Licensee to submit to a blood alcohol test. At one point, Trooper Barrall claimed that it was approximately an hour and fifteen minutes (R.R. at 13a); however, he also testified that he arrived at the scene at 9:41 P.M. and arrived at the hospital around 1:30 A.M. (R.R. at 7a–8a).

Furthermore, there is no evidence in the record to indicate that Trooper Barrall left the scene of the accident with the purpose of going to the hospital to arrest Licensee for drunk driving. In fact, according to Trooper Barrall's testimony, it was not until he arrived at the hospital and began to interview Licensee that Trooper Barrall became aware of Licensee's possible intoxication. (R.R. at 8a.)

that he was going to be placed in custody, or that he was not free to leave the hospital. (R.R. at 26a.)

To sustain a license suspension under 75 Pa.C.S. § 1547(b), DOT must establish that the licensee:

(1) was arrested for driving while under the influence of alcohol,

(2) was requested to submit to a chemical test,

(3) refused to submit to such a test, and

(4) was specifically warned that a refusal would result in the revocation of his driver's license.

*Department of Transportation, Bureau of Driver Licensing v. Jennings,* 156 Pa.Commonwealth Ct. 219, 627 A.2d 211 (1993). Here, Licensee argues that DOT failed to establish the arrest requirement.

The trial court, resolving all the factual issues in favor of DOT, held that a formal declaration of arrest or act of physical force by Trooper Barrall was unnecessary to satisfy the arrest requirement; all that was necessary was that Licensee be under the custody and control of Trooper Barrall. The trial court concluded that such control existed for the following reasons:

It is true in this case that [Licensee] was never told that he was quote, under arrest, close quote, or that he was not free to leave. Frankly, those declarations were unnecessary. The testimony at the previous hearing left no doubt that [Licensee] was not leaving the hospital. He had two young—he had two children with him, one of whom he was driving to college. I believe it was his daughter. She was being treated. There was no doubt—there was no question that he was not leaving the hospital until her treatment was complete.

More importantly, I think, [Licensee] received the Miranda warnings. He was given official warnings, official Miranda warnings. And I think that that case distinguishes [*Woods v. Department of Transportation, Bureau of Traffic Safety,* 116 Pa.Commonwealth Ct. 294, 541 A.2d 846 (1988) ] and makes the case more—makes it resemble [*Department*

*of Transportation, Bureau of Driver Licensing v. Jones,*
120 Pa.Commonwealth Ct. 88, 547 A.2d 877 (1988), *appeal
denied,* 522 Pa. 579, 559 A.2d 40 (1989) ].

. . . .

   Okay.  For those reasons then, I determine the arrest
issue adverse to [Licensee] and in favor of [DOT]. . . .
(N.T. at 4–6, January 25, 1994.)

■   We agree with the trial court that a formal declaration
of arrest or act of physical force is unnecessary for the
purpose of a section 1547(b) "arrest."  Nevertheless, what
transpired here is insufficient to constitute such an arrest.[6]

■   To constitute an arrest under section 1547(b), the
licensee must be under the custody and control of the arrest-
ing officer.  *Glass v. Department of Transportation, Bureau
of Traffic Safety,* 460 Pa. 362, 333 A.2d 768 (1975); *Depart-
ment of Transportation, Bureau of Driver Licensing v. Jones,*
120 Pa.Commonwealth Ct. 88, 547 A.2d 877 (1988), *appeal
denied,* 522 Pa. 579, 559 A.2d 40 (1989).  The issue thus
becomes whether, under the totality of the circumstances, the
reasonable impression of the licensee should have been that he
was subject to the officer's custody and control at the time he
refused the chemical test.  *Jones.*

We cannot agree with the trial court's conclusion that
Licensee should have believed that he was subject to Trooper
Barrall's custody and control.  Two facts persuaded the trial
court here that Licensee was in Trooper Barrall's custody: (1)
Licensee was a worried parent attending to the medical needs
of his children and *would not leave* the hospital until his
children were treated; and (2) Licensee was read a Miranda
warning.  Therefore, to conclude as the trial court did, that
Licensee was arrested, we would have to hold that whenever a
licensee has been requested to submit to a chemical test, is not
likely to leave the premises of the testing facility when left

6.  We note that the question of whether a licensee has been placed
   under arrest for purposes of section 1547(b) is a factual rather than a
   legal determination.  *Woods v. Department of Transportation, Bureau of
   Traffic Safety,* 116 Pa.Commonwealth Ct. 294, 541 A.2d 846 (1988).

unattended and has been given a Miranda warning, then that licensee has been arrested. We have never held so and we will not do so here.[7]

■ Moreover, in reviewing the totality of the circumstances, we remain unpersuaded that Licensee was under the custody and control of Trooper Barrall. Trooper Barrall remained at the accident scene for over an hour and did not follow the ambulance to the hospital with the intention of requesting that Licensee submit to a blood alcohol test. (R.R. at 8a.) *See Woods.* When he arrived at the hospital, Trooper Barrall never restricted Licensee's freedom within the corridors of the hospital, nor did he indicate to Licensee that he could not leave the hospital or that he was going to be placed under arrest for drunk driving. *See Id.* The fact that Licensee would not leave until his children were treated is irrelevant to whether he *could have left* had he chosen to do so. Trooper Barrall only told Licensee that he had a right to remain silent and that if he refused to submit to a blood alcohol test he would lose his license. (R.R. at 8a, 9a.) In fact, Trooper Barrall ended up leaving the hospital altogether without "formally" arresting or charging Licensee for drunk driving.

Having concluded that Trooper Barrall never communicated, either verbally or through his actions, any message to Licensee that Licensee was in Trooper Barrall's custody and control, we must reverse the decision of the trial court. *See Jones; Woods.*

## ORDER

AND NOW, this 1st day of September, 1994, the order of the Court of Common Pleas of Philadelphia County, dated January 25, 1994, at Docket No. 3676, is hereby reversed.

7. We note that the trial court relied on *Jones;* however, in *Jones,* the attending police officer informed the licensee that the officer was going to place the licensee under arrest for drunk driving. Here, Trooper Barrall never informed Licensee that he was going to be arrested for driving under the influence.