Karen L. MALETIC

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 5, 2003.

Decided March 26, 2003.

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for appellant.

No appearance entered on behalf of appellee.

BEFORE: COLINS, President Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge COHN.

The Department of Transportation, Bureau of Driver Licensing (Department) appeals from the order of the Court of Common Pleas of Allegheny County, which sustained the appeal of Karen L. Maletic (Licensee) from the suspension of her operator's license. We reverse.

On December 18, 2000, the Department notified Licensee that her operating privileges were being suspended for one year pursuant to Section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, for refusing to submit to a chemical test on November 22, 2000. She filed a timely appeal and the matter was heard *de novo* before the trial court. Testifying for the Department was Officer Michael Baird. Licensee testified on her own behalf. The trial court made the following pertinent findings.

On November 22, 2000, Officer Baird was dispatched to the site of a single-vehicle accident, where he observed Licensee's vehicle on its side with her trapped inside. When the officer offered help, Licensee responded that she was all right and that he should not call the police. An emergency medical service team extracted Licensee from the vehicle and transported her to the hospital. Prior to Licensee's going to the hospital, however, Officer Baird questioned her about the accident. She stated that she did not know how the accident occurred, but she did admit to drinking prior to the event. The officer detected a strong odor of alcohol on Licensee's breath, noted that she slurred her words, there was a case of beer in Licensee's vehicle and that Licensee had a lump on her head.

After Officer Baird spent one-half hour at the accident scene investigating, he went to the hospital where he found Licensee in the emergency room on a gurney. Medical personnel were treating her when he arrived, and he noticed that they were

extracting blood from her for medical purposes. The officer told her, while she was lying on the gurney, that she was under investigation for driving while under the influence. He then read to her Form DL–26, which sets forth the warnings in accordance with *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989). Form DL–26 includes the statement: "Please be advised that you are now under arrest for driving under the influence of alcohol or a controlled substance pursuant to Section 3731 of the Vehicle Code."

After reading the form to Licensee, Officer Baird requested several times that she consent to having blood drawn for "legal" as well as medical purposes. Licensee refused, even after being warned, once again, pursuant to *O'Connell.* Officer Baird then left the emergency room, deeming Licensee's action a refusal to consent to a blood test.

Officer Baird testified both that Licensee was not under arrest at the time he read the Form DL–26 to Licensee, and that he considered his reading of the form as placing Licensee under arrest. Aside from his verbatim reading of the Form DL–26, he did not tell Licensee that she was under arrest or was not free to leave. He did not give the form to Licensee to read, and he did not know whether Licensee understood what he was reading to her. He also stated that he never physically arrested Licensee or took her into custody. He testified that, had she not

been injured, he would have arrested her, but stated that he did not arrest her.

Licensee testified that she did not recall the officer reading anything to her. She further testified that it was possible that the officer did read the form to her, but there was too much going on in the emergency room for her to recall. She stated that she was never told that she was under arrest. At the hearing, her position was that the license suspension could not be sustained because (1) she was never arrested and (2) she was not able to make a knowing and conscious refusal to the request for a blood test because of the confusion taking place in the emergency room.

The trial court agreed with both of Licensee's arguments. It noted that the only evidence suggesting that an arrest had occurred came from the officer's reading of the Form DL–26 to Licensee. The officer's testimony, however, indicated that he made no arrest prior to Licensee's refusal to submit to the blood test, that he never made mention of a future arrest, and that Licensee was in no way confined or restrained so that she could not come or go at her leisure. The court determined that a statement read in a form by the officer did not vitiate the balance of his testimony establishing that an arrest did not occur. The court, therefore, found that Licensee was not under arrest prior to her refusal to submit to a blood test.[1]

 The trial court, accordingly, sustained Licensee's appeal, and this appeal followed. This Court's scope of review is

---

**1.** The court then noted that, while this finding alone would require that Licensee's appeal be sustained, Licensee's appeal could also be sustained on the basis that she did not make a knowing and conscious refusal to submit to a blood test. The court found that the request to submit to the test was made in an "atmosphere of pandemonium" in the emergency room, where Licensee was lying on a gurney while hospital personnel worked on her and

were talking. The court noted that Licensee testified that she did not recollect Officer Baird speaking to her at all at the hospital, and the officer admitted that he did not know whether Licensee was able to understand anything that he had read to her. Under these circumstances, the court determined that it was "impossible" for Licensee to have made any decision knowingly and consciously. (Trial Court's Opinion, p. 7.)

limited to determining whether the trial court committed an error of law, an abuse of discretion, or whether the trial court's findings of fact are supported by substantial evidence. *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992). Additionally, we must review the evidence in the light most favorable to the party that prevailed before the trial court. *Department of Transportation, Bureau of Driver Licensing v. Malizio*, 152 Pa.Cmwlth. 57, 618 A.2d 1091 (1992).

■ The Department argues that the trial court erred by (1) finding that Licensee was not under arrest at the time Officer Baird requested that she submit to a blood test, and (2) concluding that Licensee was incapable of making a knowing and conscious refusal in the absence of supporting medical evidence.

■ To establish that a suspension of operating privileges was proper, the Department must prove at a statutory appeal hearing that the licensee (1) was arrested for driving while under the influence by a police officer who had reasonable grounds to believe that the licensee was operating a vehicle while under the influence of alcohol or a controlled substance, (2) was asked to submit to a chemical test, (3) refused to do so, and (4) was warned that a refusal would result in a license suspension. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 558 Pa. 439, 737 A.2d 1203 (1999). Moreover, the issue of whether a licensee has been placed under arrest for purposes of Section 1547 is one of fact. *Pappas v. Department of Transportation, Bureau of Driver Licensing*, 669 A.2d 504 (Pa.Cmwlth.1996). The relevant inquiry is whether the licensee, at the time the testing request is made, would have inferred from the totality of the circumstances that he or she was under the custody and control of the police officer. *Id.*

The Department asserts that the officer's reading of the DL-26 form contradicts his immediately preceding statement that she was simply under "investigation" and, in fact, he did not leave the hospital until she had refused to submit to the chemical testing. It further points to Officer Baird's later testimony that he would have "physically" arrested Licensee had she not been indisposed with medical treatment. It asserts that, under the totality of the circumstances test, this evidence is sufficient to meet its burden that Licensee was placed under arrest, relying upon several cases that we shall now examine.

In *Department of Transportation, Bureau of Traffic Safety v. Uebelacker*, 98 Pa.Cmwlth. 436, 511 A.2d 929 (1986), the police officer arrived at the accident scene, radioed for an ambulance, followed it to the hospital and, waited while the licensee was confined to a bed. The officer then told the licensee that "he was going to be arrested" for driving under the influence and the officer stated that he would like the licensee to submit to a blood test. We held in *Uebelacker* that the totality of the circumstances established that a reasonable person would have inferred that he was under the custody and control of the police officer. In *Department of Transportation, Bureau of Driver Licensing v. Shine*, 114 Pa.Cmwlth. 523, 539 A.2d 42 (1988), the officer who investigated the accident then went to the hospital and advised the licensee that he was going to be arrested for several charges, including driving under the influence. We determined, there, that the evidence showed that the totality of the circumstances was sufficient for the licensee to infer that he was under the control or custody of the officer, even though the officer did not move the licensee from the hospital to the police station to process the arrest. In

*Department of Transportation, Bureau of Driver Licensing v. Jones,* 120 Pa.Cmwlth. 88, 547 A.2d 877 (1988), *petition for allowance of appeal denied,* 522 Pa. 579, 559 A.2d 40 (1989), we determined that an arrest had occurred when the police officer investigating the accident then went to the hospital and gave the licensee his *Miranda* rights, with the explanation that he was going to be placed under arrest for drunk driving. Again, we said that, under the totality of the circumstances, the reasonable impression of the licensee should have been that he was subject to the officer's custody and control.

The trial court, however, found the case of *Welcome v. Department of Transportation, Bureau of Driver Licensing,* 167 Pa. Cmwlth. 245, 647 A.2d 971 (1994), to be persuasive. There, we determined that a licensee being treated at a hospital following an accident was *not* under arrest when the investigating officer informed the licensee that he had the right to remain silent, "informed [him] of the implied consent law," and requested that he submit to a blood test. *Id.* at 973. We found significant in *Welcome* the fact that the officer never restricted the licensee's freedom at the hospital or indicated that he could not leave or would be placed under arrest for drunk driving. Also, we noted that the fact that the licensee would not leave the hospital because of his concern for his children, who were also in the accident and being treated, had no bearing on the fact that he *could have left* the hospital had he chosen to do so. Finally, we found it significant that when the licensee refused to consent to a chemical test, the officer simply left the hospital without "formally" arresting or charging him. Importantly, however, our decision in that case does **not** state that the officer's explanation of the "implied consent law" included the paragraph read by Officer Baird in the present case stating that the licensee was "now

under arrest for driving under the influence." In addition, in our case it is clear from the record that Licensee was not going to be leaving the hospital anytime soon because she was undergoing emergency medical treatment. (N.T. 17, 20, 23.) We, therefore, conclude that *Welcome* is distinguishable and that, in line with the cases cited by the Department, the totality of the circumstances indicate that there was an arrest.

Turning to the second issue, the Department asserts that the trial court erred in concluding that Licensee did not need to present medical evidence that she was incapable of making a knowing and conscious refusal. Licensee has the burden to show that her refusal to submit to a chemical test was not knowing and conscious. *Pappas.* Unless there are severe, obvious and incapacitating injuries, expert testimony is required to meet this burden. *Ostermeyer v. Department of Transportation, Bureau of Driver Licensing,* 703 A.2d 1075 (Pa.Cmwlth.1997).

In *Department of Transportation, Bureau of Driver Licensing v. Garlan,* 121 Pa.Cmwlth. 400, 550 A.2d 873 (1988), *petition for allowance of appeal denied,* 522 Pa. 614, 563 A.2d 499 (1989), a driver who presented only lay testimony that he had suffered a concussion, a corneal abrasion, bruises and a loss of memory was held not to have met his burden. His situation can be contrasted with that of the licensee in *Department of Transportation, Bureau of Traffic Safety v. Day,* 93 Pa.Cmwlth. 49, 500 A.2d 214 (1985), where we held that a broken jaw, severe facial lacerations, a broken arm, an injured leg and blows to the head were sufficiently severe and obvious to obviate the need for expert medical testimony. In the case *sub judice,* however, the only evidence regarding the injury was that Licensee bumped her head and

had a lump on her forehead that was black and blue and swelling and that she had two black eyes. Nonetheless, she was able to converse with Officer Baird at the accident scene and later with medical personnel. Contrary to the circumstances in *Day*, this evidence does not support the notion that Licensee's injuries were so obviously severe and incapacitating that she did not need to present expert medical evidence. Indeed, they were far less severe than those in *Garlan*. Accordingly, since she failed to present any expert testimony that she could not make a knowing and conscious refusal, we agree with the Department that Licensee has not met her burden on this issue.

Based on the foregoing discussion, the trial court's order is reversed.

### ORDER

**NOW,** March 26, 2003, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed.

## DISSENTING OPINION BY Judge FRIEDMAN.

The Court of Common Pleas of Allegheny County (trial court) sustained Karen L. Maletic's (Licensee) appeal from the suspension of her operator's license based on the finding that Licensee was not under arrest at the time she refused to submit to a blood test.[1] Unlike the majority, I do not believe the trial court abused its discretion in so finding; therefore, I respectfully dissent.

The issue of whether a licensee has been placed under arrest for purposes of section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, is one of fact. *Pappas v. Department of Transportation, Bureau of Driver Licensing*, 669 A.2d 504 (Pa.Cmwlth.1996). The relevant inquiry is whether the licensee, at the time the testing request is made, would have inferred from the totality of the circumstances that he or she was under the custody and control of the police officer. *Id.*

Because the issue of whether Licensee was under arrest at or prior to her refusal to submit to a blood test is one of pure fact, this court must determine whether substantial evidence supports the trial court's finding that Claimant was not under arrest at the critical time.[2] On the issue of arrest, Officer Michael Baird testi-

1. The Department of Transportation, Bureau of Driver Licensing (Department) suspended Licensee's operating privileges for one year pursuant to section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, for refusing to submit to a chemical test. As the majority correctly states, to establish that a suspension of operating privileges was proper, the Department must prove at a statutory appeal hearing that the licensee (1) *was arrested* for driving while under the influence by a police officer who had reasonable grounds to believe that the licensee was operating a vehicle while under the influence of alcohol or a controlled substance, (2) was asked to submit to a chemical test, (3) refused to do so, and (4) was warned that a refusal would result in a license suspension. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 558 Pa. 439, 737 A.2d 1203 (1999). Licensee takes the position that her license suspension could not be sustained because the Department failed to establish both the first and the third elements of its burden. However, I limit this dissent to my belief that the Department failed to establish the first of these elements, that is, that Licensee was under arrest prior to her refusal to submit to a blood test.

2. This court's scope of review is limited to determining whether the trial court committed an error of law or an abuse of discretion, or whether the trial court's findings of fact are supported by substantial evidence. *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992). Additionally, we must review the evidence in the light most favorable to the party that prevailed before the trial court. *Department of Transportation, Bureau of Driver Licensing v. Malizio*, 152 Pa.Cmwlth. 57, 618 A.2d 1091 (1992).

fied for the Department of Transportation, Bureau of Driver Licensing (Department) as follows:

Q. At any time after you had a chance to talk with [Claimant at the accident scene] and she admitted that she had had some drinks, and you noticed—indicated on direct examination that she had slurred speech, did you at that point before she was transported to [the hospital] ever advise her that she was under arrest for suspicion of DUI?

A. No, I did not.

(N.T. at 15–16.)

Q. What was the first conversation you had with [Claimant] at the ER?

A. At the ER I initially asked her how she was and she stated that she was doing okay. At that point I advised her that I was investigating the accident, and I advised her that she was being investigated for driving under the influence, at which point I read her her O'Connell Warnings.

Q. You didn't tell her she was under arrest for DUI at that point, did you?

A. No, she was not.

Q. You didn't tell her she was charged with anything at that point, did you?

A. No, I did not.

Q. Did you ever give her any Miranda Warnings, either at the scene of the accident or in the emergency room?

A. No, I did not, sir.

Q. After you had engaged her in your initial dialogue, when was it that you first asked her to submit to a blood draw, or did you, in fact, ask her to submit to a blood draw separate from the blood draw that was made for medical purposes?

A. No, I did not. At the point I started talking with [Claimant] they were already into the blood draw for medical purposes.

Q. Did you ever tell [Claimant] that after she had undergone whatever medical treatment was advised at that point she was not free to go?

A. No, I didn't. She was unable to leave the hospital at that point but she was not under my control.

Q. This would be my next question. You didn't—if she had stayed there it wasn't because of anything that you had imposed upon her?

A. That is correct.

(N.T. at 18–20.)

Q. Officer, it's your testimony that you did read the chemical test warnings off the Department Exhibit No. 1 [Form DL–26] to [Claimant] at the hospital, right?

A. Yes, I did.

Q. And you read—including specifically, you read warning No. 1 to [Claimant] at the hospital, correct?

. . .

Q. And isn't it true warning No. 1 on the chemicals testing warning form is: Please be advised you are now under arrest for driving under the influence of alcohol pursuant to [Section] 3731 of the Vehicle Code?

A. That's correct.

Q. So you had advised [Claimant] she was under arrest for driving under the influence of alcohol?

A. That's correct. I didn't physically arrest her but she was read the warnings, which included No. 1.

Q. And she was advised that she was being arrested for DUI?

A. That's correct.

THE COURT: I thought you said earlier you were only investigating. Did you actually form in your mind an intent to

charge her at that time, at the time you read this to her, or were you still investigating?

THE WITNESS: Well, Your Honor, it was my conclusion she was intoxicated to the level she was unable to drive.

THE COURT: So she wasn't under arrest—

THE WITNESS: Not—

THE COURT:—even though you read this form to her?

THE WITNESS: That's correct. Not physically.

THE COURT: Well, is it fair to say that you didn't physically take her into custody because you couldn't; she was in a gurney in the hospital?

THE WITNESS: That's correct.

THE COURT: And she was being treated for physical injuries sustained in an accident?

THE WITNESS: That's correct, Your Honor.

THE COURT: Had she not been physically injured and she was just sitting in a chair and appeared to have no physical injuries, was it your intent, being then on the 22nd of November of 2000, if she had otherwise been ambulatory, to have taken her into custody and charged her?

THE WITNESS: That's correct, Your Honor, I would have placed her under arrest and handcuffed her and transported her to our station.

(N.T. at 25–27.)

In addition, Licensee testified in her own behalf on this issue. Licensee stated that she did not recall Officer Baird reading anything to her. She further testified that it was possible that Officer Baird did read the form to her, but there was too much going on in the emergency room for her to recall. She stated that she was never told that she was under arrest. (*See* N.T. at 33, 35–39.)

In considering the testimony, the trial court noted that the only evidence suggesting that an arrest had occurred came from Officer Baird's reading of the Form DL–26 to Claimant,[3] which the Department argued constituted an arrest. Officer Baird's testimony, however, indicated that he made no arrest prior to Licensee's refusal to submit to the blood test, that he never made mention of a future arrest and that Licensee was in no way confined or restrained by him so that she could not come or go at her leisure. The trial court determined that a statement read in a form by Officer Baird did not vitiate the balance of his testimony establishing that an arrest did not occur. The trial court therefore found as a fact that Licensee was not under arrest prior to her refusal to submit to a blood test.

As the fact finder in a license suspension appeal, the trial court may accept or reject any testimony in whole or in part, subject only to review under the abuse of discretion standard. *DiCola v. Department of Transportation, Bureau of Driver Licensing*, 694 A.2d 398 (Pa.Cmwlth.1997). Bearing this in mind, I would conclude that the trial court's finding that Licensee was not under arrest at the time she refused to submit to a blood test is supported by substantial evidence of record.

---

**3.** Officer Baird testified that, aside from his verbatim reading of the Form DL–26, he never told Claimant that she was under arrest or was not free to leave, and he never gave her the *Miranda* rights. Further, he never gave the form to Claimant to read, and he admitted that he did not know whether Claimant understood what he was reading to her. He also admitted that he never physically arrested Claimant or took her into custody. He testified that had she not been injured, he would have arrested her, but again stated that he did not arrest her.

Here, Officer Baird gave Licensee conflicting messages. First, he directly told her that she was under *investigation* for driving while under the influence. He then read to her verbatim Form DL–26 that advises the person being read to that he or she is "now under arrest for driving under the influence of alcohol or a controlled substance pursuant to Section 3731 of the Vehicle Code." Officer Baird said or did nothing else that would give Licensee the impression that she was under arrest or under Officer Baird's custody or control. When Licensee refused to submit to the blood test, Officer Baird simply left the hospital. Moreover, in testimony that is somewhat contradictory, Officer Baird essentially admitted at one point that he had not arrested Claimant, that she was not in his custody or control, and that there were no restrictions on her movements, except for those connected with her medical condition.

I note also that the trial court found significant the fact that Officer Baird did not know whether Licensee understood what he had read to her. Under the totality of the circumstances, where, at most, Licensee was given conflicting information, I cannot agree that the trial court abused its discretion by finding that Licensee was not under the custody or control of Officer Baird when she refused to consent to the blood test. I cannot conclude, as the Department would have us do, that Officer Baird's reading of a pre-printed form contradicts his immediately preceding statement that she was simply under "investigation." To make this conclusion would usurp the trial court's prerogative as fact finder, for we would then place greater weight upon Officer Baird's reading of an anonymous form and place lesser weight upon all other evidence that indicated that Licensee was not under the control or

custody of Officer Baird, including his own testimony that she was not. The trial court is the fact finder, and the evidence upon which it relied must be viewed in a light more favorable to Licensee as the party who prevailed below. *Department of Transportation, Bureau of Driver Licensing v. Malizio*, 152 Pa.Cmwlth. 57, 618 A.2d 1091 (1992). The Department is impermissibly asking us to view the evidence more in its favor.

I also note that the Department emphasized Officer Baird's later testimony that he would have "physically" arrested Claimant had she not been indisposed with medical treatment. Officer Baird's intentions and suppositions are not, however, particularly relevant to the inquiry of whether *Licensee* would have inferred under the totality of the circumstances that she was under his custody and control. Nor is it relevant that Officer Baird appeared to draw a distinction in his mind between "physical" arrest and some other undefined species of arrest. Had Officer Baird truly desired to arrest Licensee, he could have done so directly and without contradiction. The evidence, however, does support a different finding, which finding was within the trial court's purview to make.

I further observe that this case is distinguishable from those cases relied upon by the Department. In *Department of Transportation, Bureau of Traffic Safety v. Uebelacker*, 98 Pa.Cmwlth. 436, 511 A.2d 929 (1986), the police officer directly told the licensee at the hospital that "he was going to be arrested" for driving under the influence and that the officer would like for him to submit to a blood test. The issue in that case, however, was whether the officer's use of the phrase "going to be arrested" was sufficient for the licensee to infer that he was under the control or custody of

the officer.[4] The issue was not, as here, whether the trial court abused its discretion in its credibility and weight determinations regarding the conflicting information provided to a licensee by a police officer.

Similarly, in *Department of Transportation, Bureau of Driver Licensing v. Shine*, 114 Pa.Cmwlth. 523, 539 A.2d 42 (1988), the officer directly informed the licensee in the hospital that he was going to be arrested for several charges, including driving under the influence. Under those circumstances, we determined that the evidence showed that the totality of the circumstances was sufficient for the licensee to infer that he was under the control or custody of the officer. In *Department of Transportation, Bureau of Driver Licensing v. Jones*, 120 Pa.Cmwlth. 88, 547 A.2d 877 (1988), *appeal denied*, 522 Pa. 579, 559 A.2d 40 (1989), we determined that an arrest had occurred when the police officer gave the licensee in the hospital *Miranda* rights, with the explanation that he was going to be placed under arrest for drunk driving. Again, these cases did not present an issue where the fact finder was presented with conflicting evidence from the police officer himself, or where the police officer in one breath indicated that the licensee was under investigation and in the other, purely from having read a pre-printed form, indicated that the licensee was under arrest. The cases relied upon by the Department simply involved whether the police officer's indication of impending arrest and the delivery of *O'Connell* warnings placed the licensee under the impression that he was under arrest.

By contrast, in *Welcome v. Department of Transportation, Bureau of Driver Licensing*, 167 Pa.Cmwlth. 245, 647 A.2d 971 (1994), we determined that a licensee being treated at a hospital following an accident was *not* under arrest when the investigating officer informed the licensee that he had the right to remain silent, "informed [him] of the implied consent law," and requested that he submit to a blood test. *Id.* at 973. Our decision does not indicate whether the officer's explanation of the "implied consent law" included the paragraph read by Officer Baird in the present case stating that the licensee was "now under arrest for driving under the influence." We found significant in *Welcome*, however, the fact that the officer never restricted the licensee's freedom at the hospital or indicated that he could not leave or would be placed under arrest for drunk driving. Also, the fact that the licensee would not leave the hospital because of his concern for his children, who were also in the accident and being treated, had no bearing on the fact that he *could have left* the hospital had he chosen to do so. We also found significant the fact that when the licensee refused to consent to a chemical test, the officer simply left the hospital without "formally" arresting or charging the licensee. Here, the trial court relied upon *Welcome* in arriving at its decision, and I cannot conclude that the trial court erred by so doing.

Accordingly, I would accept the trial court's finding that Licensee was not under arrest at the time she was asked and refused to submit to a blood test, and, for that reason, I would affirm the trial court's

---

**4.** We held in *Uebelacker* that the totality of the circumstances established that the licensee would have inferred that he was under the

custody and control of the police officer, where the phrase "was going to be arrested"

order sustaining Licensee's appeal.[5] *See id.; Jones.*

had a sufficient character of immediacy about it.

5. Because of my disposition of this issue, I would not need to address the Department's second issue concerning whether Licensee made a knowing and conscious refusal to submit to the test. *See Welcome.*